Linda Leona WALKER, Plaintiff and Appellant,

v.

Ned Wesley WALKER, Defendant and Respondent.

No. 19538.

Supreme Court of Utah.

Sept. 20, 1985.

David S. Dolowitz, Salt Lake City, for plaintiff and appellant.

Tim Dalton Dunn, Salt Lake City, for defendant and respondent.

ZIMMERMAN, Justice.

After eight years of marriage, plaintiff Linda Walker sued Ned Walker for divorce, seeking custody of the couple's two minor children, alimony, and child support. The trial court granted the divorce, awarded custody to Mr. Walker, accorded limited visitation rights to Mrs. Walker, and denied Mrs. Walker's request for alimony. Linda Walker asserts that the trial court abused its discretion both in denying her alimony and in placing various restrictions on her visitation rights. We affirm the trial court.

Mrs. Walker filed for divorce in July of 1982. After an initial custody hearing, the trial judge ordered that the children spend equal time with each parent and reserved any final decision concerning custody until a clinical psychologist had evaluated the family situation. Another hearing was held in August of 1982, at which time the court-appointed psychologist, a psychiatrist, and Mrs. Walker testified. The judge awarded temporary custody to Mr. Walker and granted Mrs. Walker rights of visitation, but limited her visits to those arranged through a third party and at which the maternal grandmother was present. In making this temporary order, the judge granted Mrs. Walker's counsel the right to present additional expert testimony concerning the custody issue at trial on the merits, "[b]ut only if the expert has interviewed both parties and the children." Mrs. Walker was also awarded $250 a month in temporary alimony.

In July of 1983 a trial on the merits was held. The court heard expert testimony on the custody question from a court-appointed psychologist, from Dr. Elizabeth Stewart, who testified as a witness for Mrs. Walker, and from two day-care providers, who testified on behalf of Mr. Walker.

The court-appointed psychologist had spent approximately 25 to 28 hours on the case. He had interviewed and tested both parties, interviewed both children, and communicated with about a half-dozen professionals who had been in contact with the family. He testified that Mrs. Walker was suffering from a pervasive mental illness—paranoia—and that this psychotic condition had worsened since he had seen her a year earlier. He recommended that custody be awarded to Mr. Walker and that in addition to the limitations imposed on Mrs. Walker's visitation rights in the temporary custody order the court should permit visits no more often than once every three months and never for overnight.

Dr. Stewart had tested and interviewed Mrs. Walker seven times over a two-month period; she had not interviewed or tested either Mr. Walker or the two children. From her examination, Dr. Stewart concluded that Mrs. Walker was neither paranoid nor psychotic. Although Dr. Stewart was of the view that the wife had a hysterical personality condition, she testified that this condition would not make Mrs. Walker unable to care for her children.

On the issue of alimony, Mrs. Walker testified that she had been employed in jobs paying from minimum wage to $5.50 per hour, that at the time of trial she was working full time for $5.50 per hour, and that she was unable to fully support herself. She requested $300 per month as alimony. Mr. Walker testified that he earned about $20,000 per year.

The court took the matter under advisement. It later rendered its written decision, which provided in pertinent part:

2. Defendant is awarded the care, custody and control of the minor children of the parties. The plaintiff shall have temporary rights of visitation with the minor children of the parties, at the discretion of Defendant's attorney, provided that all visits shall be in the presence of a mutually-agreed-upon third party. Permanent rights of visitation shall not be considered until such time as the Court has received testimony that plaintiff's mental illness is in remission. Such testimony must be that of Dr. Crist, Dr. Washburn, Dr. Greenwood, or Dr. Howell, the experts who testified in the matter; or of a person of equal expertise and competence after such person has interviewed and evaluated each of the parties, as well as the minor children of the parties, to the same extent that the named experts did in preparing their reports.

3. Neither party is awarded alimony.

On appeal, Mrs. Walker contends that the trial court's order respecting visitation and alimony amounted to an abuse of discretion. Her first argument is that the court effectively denied her all visitation rights and that this result is neither supported by the evidence nor sanctioned by the statute governing visitation rights. At the outset, it should be noted that the trial court did not deny Mrs. Walker all visitation rights. Rather, the court limited visits on a temporary basis and refused to consider permanent arrangements until it was presented with evidence that Mrs. Walker's mental illness "was in remission," which we interpret to mean that her condition had improved sufficiently to warrant permitting more extensive visitation.

 Decisions with respect to visitation are to be made in accordance with section 30-3-5(1) of the Code, which states: "Visitation rights of parents ... shall take into consideration the welfare of the child." U.C.A., 1953, § 30-3-5(1) (1984 ed.). A trial court's determination respecting custody and visitation is equitable and will be overturned on review only for an abuse of discretion. *Smith v. Smith*, 1 Utah 2d 75, 262 P.2d 283, 284 (1953); *Fletcher v.*

*Fletcher*, Utah, 615 P.2d 1218, 1222 (1980); *Lord v. Shaw*, Utah, 682 P.2d 853, 856 (1984). There is no merit to Mrs. Walker's contention that the trial court's order respecting visitation should be reversed because it did not satisfy the statute or because it was not supported by the evidence. Expert testimony was offered on both sides of the question. The trial judge chose to reject Dr. Stewart's testimony and accept that of the court-appointed psychologist and other witnesses for Mr. Walker. Because the critical factor in resolving the visitation issue was how Mrs. Walker's mental condition affected interactions between her and her children and Dr. Stewart did not interview all the members of the family, the court was well within its discretion in according her testimony less weight than that of the experts who had evaluated the whole family. *See Baldwin v. Vantage Corp.*, Utah, 676 P.2d 413, 416–17 (1984). The trial court also demonstrated that it had considered "the welfare of the child[ren]," as required by section 30-3-5(1), by focusing on Mrs. Walker's mental condition and by limiting visitation to avoid adverse effects on the children. This same concern is shown by the trial court's requirement that before visitation rights can be altered, any experts who testify must examine all family members.

Mrs. Walker's second challenge to the visitation order is that it effectively precludes her from calling Dr. Stewart or any other expert of her choosing on the question of remission. She argues that she must rely on the testimony of the four doctors named in the order, all of whom were arrayed against her, and that this fundamental unfairness demonstrates that the court abused its discretion. Contrary to Mrs. Walker's assertion, the court did not rule that only the experts named in the order could testify as to whether her mental illness was in remission. The order specifically provides that in addition to those doctors named any other person of "equal expertise and competence" could testify on the issue, but only "after such person has interviewed and evaluated each of the parties, as well as the minor children

of the parties, to the same extent that the named experts did in preparing their reports." Further testimony from Dr. Stewart is not precluded. She or any other professional who first examines both parents and both children would be qualified to testify as to family dynamics, improvements in Linda Walker's mental state, and what arrangements might enhance the children's welfare.

 There is an aspect of the visitation order that is troubling, although neither party has raised the issue directly. The trial court granted temporary visitation rights to Mrs. Walker only "at the discretion of [Mr. Walker's] attorney." Neither of the parties had sought this interjection of Mr. Walker's counsel into the role of mediator. This put Mr. Walker's attorney in an ethically untenable position. His primary obligation is to his client. *See Ellis v. Gilbert*, 19 Utah 2d 189, 192, 429 P.2d 39, 41 (1967). In his capacity as an advocate for his client, he successfully resisted Mrs. Walker's attempt to secure custody or extensive visitation rights. Now, however, the trial court has required him to act as a surrogate for the court and fix the time and terms of all visits, a role that requires him to mediate between his client and Mrs. Walker. Essentially, he is to serve two masters—the court and his client—in directly conflicting roles. Although Mrs. Walker has not asserted that her ex-husband's lawyer has in any way improperly impeded the exercise of her visitation rights and Mr. Walker has not complained that his counsel has not effectively represented him, the lawyer has nonetheless been placed in a difficult position that neither he nor the parties sought. It would have been better for the trial court to have recognized the quandary it was creating and not to have required counsel to serve in this capacity.

Mrs. Walker's final contention is that the trial court abused its discretion in denying her alimony. In determining alimony awards, the trial court must consider the financial condition and needs of the wife, the ability of the wife to produce a sufficient income for herself, and the ability of the husband to provide support for her. *Jones v. Jones*, Utah, 700 P.2d 1072, 1075 (1985); *English v. English*, Utah, 565 P.2d 409, 411 (1977). The trial court did not enter any findings of fact or conclusions of law demonstrating its consideration of these factors or the weight assigned to each. Such an analysis by the trial court would assist this Court in determining the propriety of the ruling. *See Jones v. Jones*, 700 P.2d at 1075. However, our examination of the record suggests no basis for concluding either that the trial court did not consider these factors or that it abused its discretion. At the time of trial, Mrs. Walker sought alimony of $300 per month. There was no evidence of any unique needs on her part. She was then working full time earning $5.50 per hour or $11,000 per year. Mr. Walker was earning about $20,000 per year and supporting himself and the two children. Considering these factors, we find no abuse of discretion in the trial court's denial of alimony.

Affirmed.

HALL, C.J., HOWE and DURHAM, JJ., and PHILIP R. FISCHLER, District Judge, concur.

STEWART, J., having disqualified himself, does not participate herein.

FISCHLER, District Judge, sat.