Wayne C. PAFFEL, Plaintiff
and Appellant,

v.

Jean K. PAFFEL, Defendant
and Respondent.

Jean K. PAFFEL, Plaintiff
and Respondent,

v.

Wayne C. PAFFEL, Defendant
and Appellant.

Nos. 19423, 19462.

Supreme Court of Utah.

Dec. 8, 1986.

Keith F. Oehler, Holladay, for plaintiff and appellant.

Gregory B. Wall, Salt Lake City, for defendant and respondent.

HALL, Chief Justice:

These cases, which were consolidated for purposes of appeal, arise out of the separation and subsequent divorce of Wayne C. Paffel ("appellant") and Jean K. Paffel ("respondent"). Appellant seeks reversal of case No. 19423, in which he was ordered to pay permanent alimony to respondent. Appellant also seeks reversal of case No. 19462, in which summary judgment was entered in favor of respondent for alimony arrearages.

## I.

Appellant and respondent were married on June 18, 1949, in Minnesota. The couple have two children who are both now adults. The parties separated on or about June 1, 1967, and have lived substantially apart ever since. At the time of the separation, appellant was employed by Sperry-Univac, and he remained so employed at the time of his appeal. In 1969, Sperry-Univac transferred appellant to Utah, and he has resided here since that time.

In June 1967, respondent filed an action for divorce in the Fourth District Court of Hennepin County, Minnesota. On July 5, 1967, that court ordered appellant to pay temporary child support and alimony. That court also permitted respondent to occupy the family home during the pendency of the action, but required respondent to make the mortgage payments thereon. On September 17, 1968, the case was placed on the trial calendar, with the entry indicating a reconciliation might occur. The case never went to trial, and to date no further proceedings have been pursued in that court to bring that divorce action to a close.

In 1974, a Uniform Reciprocal Enforcement of Support Act (URESA) action was filed in Third District Court of Salt Lake County, Utah ("Third District Court"), and in December of 1974 the trial court entered an order requiring appellant to pay $140 per month for support of the couple's then only minor child.

No divorce having been obtained in the above-mentioned Minnesota proceeding, appellant filed for divorce in Third District Court on November 12, 1980. Respondent answered and counterclaimed for divorce, praying for an award of permanent alimony as well as a judgment for alimony arrearages allegedly due her under the terms of the Minnesota temporary order. On July 26, 1982, the Third District Court entered a decree of divorce, but reserved for a subsequent hearing the issues of permanent alimony and alimony arrearages under the Minnesota order. On October 2, 1982, appellant remarried.

Also in October 1982, respondent petitioned the Minnesota court for a judgment of alimony arrearages under that court's temporary order. While that court originally dismissed this petition, it subsequently reviewed and reversed itself and entered judgment against appellant for respondent's claimed arrearages. On February 28, 1983, respondent filed an action on the Minnesota judgment in the Second District Court of Davis County, Utah ("Second District Court"). Decision on this matter was reserved until after the Third District Court's hearing and decision concerning permanent alimony and arrearages due under the Minnesota court's temporary order.

On June 22, 1983, a hearing was held in Third District Court regarding respondent's alimony claims. At that hearing, respondent withdrew her claim for alimony arrearages and relied on the action pending in Second District Court with respect to that claim. Following the hearing, the court took the matter under advisement and on June 24, 1983, awarded respondent permanent alimony in the amount of $300 per month commencing July 1983. The trial court relied on *Rost v. Rost*[1] for its authority to enter the judgment despite the pending Minnesota action. On July 28, 1983, judgment was rendered in the Second District Court action in favor of respondent for $6,325.25 in alimony arrearages. In his ruling, the Second District Court judge not-

1. No. 15757, slip op. (Utah Jan. 23, 1979) (unpublished opinion) (Utah court not required to abate its own action in favor of an action previously initiated in another state).

ed he had received the Third District Court's decision wherein the claim for alimony arrearages was withdrawn.

## II.

*Case No. 19462*

▉ In case No. 19462, appellant attempts to escape enforcement of the Minnesota court's judgment for alimony arrearages. Appellant contends that since the alimony arrearages issue was already before the Third District Court at the time the Minnesota judgment was entered and at the time the enforcement action was initiated, principles of comity and abatement should have either barred the Minnesota court's judgment or barred the action on the judgment in Second District Court. Appellant also contends that the Third District Court's 1974 URESA order barred respondent's claim for alimony arrearages.[2] However, determination of appellant's assignment of error under the full faith and credit clause is dispositive here.

At the outset, we note that this Court does not look favorably upon the type of forum shopping engaged in by respondent in this case.[3] However, the Court's policy against forum shopping is outweighed in this case by article IV, section 1 of the United States Constitution: "Full Faith and Credit shall be given in each State to the public ... Proceedings of every other State." Appellant contends that the Minnesota judgment is not entitled to full faith and credit because the Minnesota court lacked jurisdiction over him. Specifically, appellant claims that the 1967 Minnesota divorce action was abandoned and that since no action was pending before that court, it lacked jurisdiction over him to enter the judgment for alimony arrearages.[4]

▉ In general, there is no dispute that jurisdiction and the requirements for service of process, if properly raised, may be asserted as defenses to an action on a foreign judgment.[5] A judgment granted without these prerequisites is void and need not be accorded full faith and credit by sister states.[6] However, a division of authority is found where a matter of fact or law upon which jurisdiction depends was litigated in the original suit:

> It has been held that a direct adjudication by the courts of one state that the court which rendered a certain judgment had the requisite authority and that the parties were legally brought before the court is conclusive on the question in every other state; but other cases hold that a foreign judgment may be attacked for want of jurisdiction even though the court rendering it expressly finds that jurisdiction exists.[7]

Utah is one of those jurisdictions following the former position. In *Fullenwider Co. v. Patterson,*[8] where the debtor/defendant was collaterally attacking a foreign judgment, this Court stated: "[I]f the same issue as to the jurisdiction of the foreign court was raised and adjudicated therein, then the determination of that issue becomes res judicata, and is entitled to full faith and credit, the same as any other issue that has been so determined."[9] This

---

2. Appellant's filings and submissions with the Minnesota court do not indicate that this latter issue was raised at the trial level. Assuming *arguendo* that the Minnesota judgment is not entitled to full faith and credit, we would not address this issue for the first time on appeal. *Cf. Bundy v. Century Equip. Co.,* 692 P.2d 754, 758 (Utah 1984).

3. *Cf. State v. Brickey,* 714 P.2d 644, 647 (Utah 1986).

4. Because we hold that no abandonment occurred, we need not address appellant's claim that the Minnesota judgment was barred by entry of the Third District Court's divorce decree.

5. *E.g., Hobelman Motors, Inc. v. Allred,* 685 P.2d 544, 545 (Utah 1984) (and cases cited therein); *Fullenwider Co. v. Patterson,* 611 P.2d 387, 389 (Utah 1980).

6. 50 C.J.S. *Judgments* § 893 (1947).

7. *Id.* at 505 (footnotes omitted).

8. 611 P.2d 387 (Utah 1980).

9. *Id.* at 389 (footnote omitted). *See also* Restatement (Second) of Judgments § 10(2) (1980); Restatement (Second) of Judgments § 10 comment d (1980) ("Preclusion attaches to

principle was further explained by the Court in *Harris v. Briggs* [10] and followed in *Clarkson v. Western Heritage, Inc.* [11] Moreover, to the extent that *Chevron Chemical Co. v. Mecham* [12] is inconsistent with this rule, it is overruled.

 Appellant does not contend on appeal that the Minnesota court did not have jurisdiction over him when it entered its original temporary support decree. In fact, the record indicates that appellant filed an answer and cross-complaint in the 1967 action. As stated above, appellant relies upon respondent's alleged abandonment of the 1967 divorce action as the basis for claiming the Minnesota court had no jurisdiction over him. In 1982 when respondent filed her motion in the Minnesota court for a judgment for alimony/maintenance arrearages, appellant appeared by local counsel and filed affidavits and a memorandum in opposition to this motion. Appellant's memorandum argued, in addition to other points, that the 1967 action had been abandoned, thereby depriving the Minnesota court of jurisdiction over appellant. The referee who heard the argument recommended findings and an order dismissing the proceeding and denying respondent's motion. These findings and order were adopted by the Minnesota district court. However, based upon respondent's motion for review, the Minnesota court subsequently reversed its earlier order and found, in pertinent part: "1. That this matter has not been abandoned by the parties; 2. That any delays in prosecution of this matter were justified and have not resulted in prejudice to [appellant] ...; [and] 3. That the temporary Order of this Court dated July 5, 1967 has continued in full force and effect...." The court went on to order appellant to pay respondent $6,292 in alimony arrearages.

Although appellant complains that the Minnesota court erred in finding the matter was not abandoned, appellant did not appeal that decision. We will not allow appellant to appeal the Minnesota court's decision in this Court. Moreover, because the issue of abandonment was previously litigated and decided by a court of competent jurisdiction, appellant, in accordance with the principles discussed above, is barred from raising the abandonment issue anew. And since the issue was decided adversely to appellant, his argument that the Minnesota court had no jurisdiction is without merit. Therefore, the Minnesota court's judgment is entitled to full faith and credit, and the Second District Court was correct in so finding. Inasmuch as the Minnesota judgment is entitled to full faith and credit, appellant's other arguments are without merit.

### III.

*Case No. 19423*

 In this case, appellant attacks the Third District Court's award of permanent spousal support and the amount of spousal support awarded. The purpose of such support is to enable the receiving spouse to maintain as nearly as possible the standard of living enjoyed during the marriage and to prevent the spouse from becoming a public charge. [13] In an action for divorce, the trial court has considerable discretion to provide for spousal support, [14] and this Court will not interfere with the trial court's award of such support in a divorce proceeding absent a showing of a clear and prejudicial abuse of discretion. [15]

 In deciding whether or not to award spousal support and, if so, in what amount,

---

both the question of the adequacy or regularity of notice and the question of territorial jurisdiction, even if only one of these questions has actually been raised.").

10. 621 P.2d 1244, 1246 (Utah), *corrected in,* 646 P.2d 767 (Utah 1980) (mem.).

11. 627 P.2d 72, 74 (Utah 1981).

12. 550 P.2d 182 (Utah 1976).

13. *See, e.g., Bushell v. Bushell,* 649 P.2d 85, 87 (Utah 1982) (temporary support).

14. *Id.* at 88. *See* U.C.A., 1953, § 30-3-5(1) (1976 ed., Supp.1983) (amended 1984 & 1985).

15. *Dority v. Dority,* 645 P.2d 56, 59 (Utah 1982).

the trial court must consider the financial condition and needs of the spouse claiming support, the ability of that spouse to provide sufficient income for him or herself, and the ability of the responding spouse to provide the support.[16] Failure to consider these factors constitutes an abuse of discretion.

Appellant claims the trial court abused its discretion by awarding respondent spousal support in this case. He first contends that the trial court's memorandum decision and supplemental findings of fact and conclusions of law demonstrate that alimony was not based upon respondent's needs, but rather upon improper grounds: (1) that appellant did not bring the Minnesota divorce action to a close (we note the finding is a general one not specifically referring to appellant); (2) that respondent only received $3,000 from the family home which was sold under threat of foreclosure; (3) that the URESA action had to be initiated before appellant paid sufficient child support; (4) that appellant's income, *in conjunction with his wife's income,* was sufficient to provide alimony; and (5) that alimony could be deducted by appellant on his tax return. In short, appellant would have us believe that the motive behind the trial court's decree was to penalize appellant and reward respondent. We disagree.

■ The findings which appellant advances in support of his argument are carefully chosen to the exclusion of other findings and evidence in the record which support the lower court's decision. Additionally, we do not believe the allegedly "improper grounds" were improper for the trial judge to consider. The fact that respondent did not bring the Minnesota divorce

action to a close, in light of the circumstances of this case, is relevant, to some degree, to the issue of her need.[17] However, the filing of the URESA proceeding, as well as appellant's own inaction in bringing the Minnesota divorce action to a close, tempers this fact. The finding that respondent received only $3,000 from the sale of the family home is relevant to the issue of whether she needs support and the degree of support required. In this regard, the record indicates that respondent's housing costs increased with the sale of the family home.

■ Appellant's complaint that the trial court considered his present wife's income and separate assets in determining his ability to pay spousal support must be placed in context. First, the memorandum decision and supplemental findings of fact and conclusions of law say nothing about appellant's present wife's separate assets. Second, at trial respondent asked appellant about his current wife's salary and place of work, and appellant stated that his wife was a teacher, receiving approximately $22,000 per year. Appellant did not make a timely objection to respondent's questions or timely move to have his own statements stricken from the record.[18] And when he did object, he did not receive a ruling on the objection. Third, appellant also testified as to his own salary and deductions, and the substance of this testimony appears independently of his current wife's income. Fourth, when appellant was being questioned concerning his expenses and his ability to pay support, appellant's own answers included the joint expenses of himself and his present wife. In dealing with

16. *Walker v. Walker,* 707 P.2d 110, 113 (Utah 1985).

17. On page 7 of his brief, appellant argues that whether the Minnesota action was brought to a close is irrelevant. Yet three pages later, he argues that permanent alimony was not proper since a fourteen-year period followed separation and the final decree of divorce.

18. Rule 103 of the Utah Rules of Evidence (Repl.Vol. 9B, 1977 ed., Supp.1986) states in pertinent part:

Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and
(1) Objection. In case the ruling is one admitting evidence, a timely objection or motion to strike appears of record, stating the specific ground of objection, if the specific ground was not apparent from the context. . . .

an analogous argument in *Kiesel v. Kiesel*,[19] we stated:

> Plaintiff alleges impropriety on the part of the trial court in considering, as part of its deliberation, the income earned by plaintiff's present wife. While it is true that a stranger to a divorce action should not be constrained, by reason of marriage, to lend financial support to his or her spouse's children by a prior marriage, *the court is not precluded from taking such circumstances into consideration in determining the ability of one who does have the legal obligation of support.*[20]

*Kiesel* involved the propriety of a trial court's upward modification of a child support order. In a proceeding for a modification increasing such child support, the ability of the supporting spouse to pay the requested increase is a factor to be considered by the trial judge. Since, as previously indicated, the ability to provide support is also a factor to be considered when awarding spousal support, the analysis in both cases is similar. Therefore, the principle stated in *Kiesel* is applicable to this case. Finally, the fact that appellant will receive tax benefits by paying alimony is relevant to the issue of his ability to pay support and may be taken into account. In this regard, appellant's present wife's income was needed in order for the trial court to properly determine the amount of the tax benefit appellant would receive.

▄ Appellant further complains that the trial court's failure to make findings concerning respondent's income, expenses, or need for support constituted error. The supplemental findings of fact and conclusions of law, as well as the memorandum decision of the trial court, do not specifically set forth the facts showing respondent's needs or ability to provide support for herself. Instead, they focus primarily upon appellant's ability to pay support. In *Walker v. Walker*,[21] we stated:

> The trial court did not enter any findings of fact or conclusions of law demonstrating its consideration of these factors [*see supra* pp. 100–101] or the weight assigned to each. Such an analysis by the trial court would assist this Court in determining the propriety of the ruling. However, our examination of the record suggests no basis for concluding either that the trial court did not consider these factors or that it abused its discretion.[22]

As in *Walker*, the evidence in this case supports the lower court's order, and appellant has made no showing to rebut the presumption that the trial court did consider respondent's income, expenses, and need for support.

▄ At the time of trial, respondent was fifty-seven years old. In a deposition used at trial, she stated that after she lost her house, she was forced into an apartment and had to rely on public assistance for several years. However, after her youngest child left school, the State of Minnesota would not support her any longer. At the time respondent's public assistance was terminated, she was receiving $300 per month in welfare payments and $60 per month in food stamps. At the time of the deposition, respondent stated that she had no savings and that her checking account had a balance of $5. She also stated that she was living in an apartment costing $305 per month and furnished, for the most part, by donations from her family. Moreover, respondent testified that she was being supported by her children and that she had no life or health insurance and could not pay her bills. Finally, respondent's testimony indicates that she was living with her daughter and that their living expenses for rent, food, telephone, electricity, and newspaper exceeded $450 at the

---

19. 619 P.2d 1374, 1376 (Utah 1980).

20. *Id.* at 1376 (emphasis added; footnote omitted).

21. 707 P.2d 110 (Utah 1985).

22. *Id.* at 113 (citation omitted). *But see Higley v. Higley*, 676 P.2d 379, 382 (Utah 1983) (trial court abused discretion in awarding permanent alimony at $100 per month because the trial judge failed to make findings on the wife's actual ability to work and because of other considerations).

time of the deposition. Respondent's needs are amply set forth in the record.

 Appellant's brief claims that the alimony award was contrary to the trial court's finding that respondent was able to provide support for herself. However, the court did not make such finding. The court merely found that appellant had been employed as stated below. And in fact, the record plainly indicates that respondent has had a difficult time finding suitable employment. Appellant and respondent were married when she was approximately twenty-three years old and he was approximately twenty-eight years old. At that time, appellant had been in the Air Force and had just finished college. Respondent apparently has had no college education. Appellant went to work for Prudential Insurance Co., while respondent maintained her job at Northwest Airlines. When appellant moved to Indiana to open his service station, respondent had to quit her job at Northwest Airlines and keep the books for appellant's business. After the couple's first child was born in 1954, respondent stayed home and cared for the house and issue up to and after the time she and appellant separated. During this period, respondent's only employment was babysitting.

In February 1980, after having her public assistance terminated, respondent went to work for United Mailing, Inc., but left that job later that year because of a foot ailment and a downturn in her employer's industry. Respondent testified that she suffered from significant health problems, including asthma and varicose veins. Additionally, appellant testified at trial that his wife had a drinking problem which had affected her health. Further, respondent stated that she did not have the skills necessary to be employed as a secretary and that she could only afford apparel suitable for employment in an industrial setting.

Respondent also claimed that her attempts to secure such employment over the past six months had been unavailing and in part frustrated by the fact that she needs to remain seated for a portion of the work day. In some respects, we are faced with the same situation as was involved in *Jones v. Jones:*[23]

> She has no professional training and few marketable skills.... The wife has no independent income. It is entirely unrealistic to assume that a woman in her mid–50's with no substantial work experience or training will be able to enter the job market and support herself in anything even resembling the style in which the couple had been living.[24]

In *Jones,* this Court held that the trial court erred in awarding the wife decreasing rehabilitative alimony given the fact in that case that she had little hope of finding suitable employment.[25] This reasoning and conclusion further sustain our affirmance of the permanent support awarded in this case.

 The record clearly demonstrates that appellant has the ability to pay respondent the support awarded. At the time of the separation, appellant was making between $8,000 to $9,000 yearly and, at the time of trial, had a gross yearly income of $32,000. He and his present wife own a house, and together they make a $1,164 monthly mortgage payment. It is true that appellant has several other liabilities. However, the trial court was merely trying to prevent respondent from becoming a public charge and attempting to realign the disparity between appellant's and respondent's standards of living. This evidence, viewed in light of respondent's age, background, and skills, supports the trial court's award.

 Appellant argues that the trial court's decision was erroneous because no

---

23. 700 P.2d 1072 (Utah 1985).

24. *Id.* at 1075 (citation omitted).

25. *Id.* at 1076. The trial court's award of $300 per month certainly will not discourage respon-

dent from seeking suitable employment. If respondent's circumstances change materially and substantially, appellant can always ask the trial court to amend its decree. *E.g., Naylor v. Naylor,* 700 P.2d 707, 710 (Utah 1985).

admissible evidence was adduced at trial concerning respondent's *then-present* income or expenses. The record indicates that respondent, who lives in Minnesota, could not afford to appear at the June 22, 1983 trial. Therefore, her August 6, 1981 deposition was offered in lieu of her personal appearance. When respondent moved to publish this deposition, appellant stated, "We have no objection." Accordingly, we will not consider this issue for the first time on appeal.[26] In conclusion, appellant has failed to meet his burden of showing that the evidence does not support the trial court's findings.[27]

### IV.

In summary, we affirm the Second District Court's ruling on respondent's motion for summary judgment, and we affirm the Third District Court's decision to award permanent alimony. Costs in both cases to respondent.

STEWART and DURHAM, JJ., concur.

HOWE, J., concurs in parts I and II and dissents as to part III.

ZIMMERMAN, Justice (concurring):

I join the majority in affirming the trial court. However, I write separately to comment on one point.

In making its ruling, the Third District Court relied on *Rost v. Rost,* No. 15757 (Utah Jan. 23, 1979), an unpublished opinion of this Court. This highlights what I think is an inadvisable practice—issuing unpublished opinions. In my view, if a case deserves being disposed of by written opinion, that opinion should be published. If a decision truly adds nothing to the law, it should be disposed of from the bench or by a short written order that may be informative to the parties but to no one else. I can discern no sound policy that is being served by the use of unpublished opinions, but I can discern several that are being subverted.

For example, our decision in *Rost v. Rost* may have been sound; however, the unpublished opinion by which it was rendered became part of a secret body of law, available only to those who assiduously collect our slip opinions. *Rost v. Rost* and other opinions comprising this body of law can be brought to the attention of trial judges only by those aware of them. This gives special advantage to those who do more than keep up their subscription to our official reports.

There is an additional and more insidious problem presented by unpublished opinions: their use may encourage a lack of candor on the part of attorneys and lead to trial court rulings not consistent with our case law. The assumption is normally made by judges that if one party advocates a position and there is contrary authority, that authority will be cited by opposing counsel. This assumption is probably shared by all attorneys, a fact that compels them to be candid about the law, because they know that if they ignore adverse authority, their omission almost certainly will be revealed.

This whole set of operational assumptions is undermined by the use of unpublished opinions. When one lawyer is privy to our unpublished opinions and another is not, the first lawyer may properly conclude that he can use those unpublished opinions that support him and ignore those that do not, all with a minimal risk of exposure. I think it very unwise for us to engage in a practice that may serve to lessen the compulsion on lawyers to be candid with courts.

It is time we stopped the practice of using unpublished opinions.

---

**26.** *See, e.g., Bundy v. Century Equip. Co.,* 692 P.2d 754, 758 (Utah 1984).

**27.** *Graff v. Graff,* 699 P.2d 765, 766 (Utah 1985) (per curiam).