**Joan EAMES, Plaintiff and Respondent,**

v.

**Emerson EAMES, Defendant and Appellant.**

**No. 860019–CA.**

Court of Appeals of Utah.

April 9, 1987.

George W. Preston, Harris, Preston, Gutke & Chambers, Logan, for defendant and appellant.

Gordon J. Low, Hillyard, Low & Anderson, Logan, for plaintiff and respondent.

Before DAVIDSON, ORME and GARFF, JJ.

## OPINION

**DAVIDSON, Judge:**

The trial court granted a divorce to plaintiff Joan Eames from defendant Emerson Eames. The Judgment and Decree provided for a distribution of property and an award of alimony to plaintiff. On appeal, defendant seeks a reversal of the trial court's judgment as it relates to alimony and distribution of property. We affirm.

The parties were married for thirty years with three children born to the union. At the time of trial in January, 1984, the youngest child was 18 years old and resided with plaintiff in the family home while she attended college. Defendant had moved to a different residence. Plaintiff was employed as a department manager and clerk for a large store and her gross income was approximately $10,000 per year. She had been employed during most of the marriage in unskilled or untrained type positions. Mr. Eames was a manufacturing engineer with Morton-Thiokol and had worked with that corporation since 1962. His gross income was approximately $34,000 per year. Because the parties placed widely varying valuations on their items of personal property, the trial judge made the division without finding specific values for each item. In addition to her share of the personal property, the plaintiff received her equity in a partnership consisting of members of her paternal family (Five Way Partnership), previous distributions from this partnership, her inherited property, gifts from her father, and a one-half interest in the family home. Plaintiff was given the right to live in the home until February 1, 1989, or until it was sold by agreement of the parties, whichever came first. While in the home, Mrs. Eames was responsible for payment of taxes, insurance, and mortgage installments. Defendant received his share of the personal property, his separate bank account, the inheritance from his parents, and an undivided one-half interest in the family home less the mortgage indebtedness at the time of trial. Each party received one-half of the other's retirement benefit, to be paid when it was received. This provision was

subject to the approved formula which considers the number of years worked during the marriage. Defendant's retirement was vested while the plaintiff's was not, his being much more valuable than hers.

Plaintiff was awarded alimony in the amount of $450.00 per month so long as the youngest child successfully pursued a full time college education, lived in the family home, remained single, or reached the age of 21 years. Then alimony was reduced to $300.00 per month and would remain so until plaintiff reached the age of 65 years. At that time alimony would terminate.

Defendant claims error in the distribution of the real and personal property of the parties and in the award of alimony. The trial court has statutory authority to decree an equitable distribution of property in a divorce action under *Utah Code Ann.* § 30-3-5 (1986). In the case of *King v. King,* 717 P.2d 715 (Utah 1986), the Utah Supreme Court emphasized that it would accord considerable deference to the trial court's judgment and treat its findings with a presumption of validity. An appellant has the burden of showing that the trial court's award "works such a manifest injustice or inequity as to clearly be an abuse of that broad discretion [in adjusting the financial needs and property interests of the parties]."

■ The trial record exposes the disparities in education, income, and earning potential between the parties. The record also reveals that any future income from the Five Way Partnership will be considerably less than defendant asserts. Defendant's claimed right to receive interest on his one-half interest in the home's equity for the period until February 1, 1989, is offset by the plaintiff's need to provide shelter and support for the parties' youngest child while she attends college. It is presumed the trial judge took these economic realities into consideration and, on balance, it can be said that he strove for an equitable distribution of the property.

■ A recent Utah Supreme Court opinion concerning alimony, *Paffel v. Paffel,* 732 P.2d 96, 100 (Utah 1986), states that the purpose of spousal support is to "enable the receiving spouse to maintain as nearly as possible the standard of living enjoyed during the marriage and to prevent the spouse from becoming a public charge." The appellate courts should not interfere with such an award without a showing of a "clear and prejudicial abuse of discretion". The Court in *Paffel* further set forth what must be considered by the trial court to avoid a challenge to the award as being an abuse of discretion. These factors are, (1) the financial condition and needs of the spouse claiming support, (2) the ability of that spouse to provide sufficient income for him or herself, and (3) the ability of the responding spouse [Mr. Eames] to provide the support. The trial record here shows that the court below carefully and properly considered the above factors. There was no abuse of discretion. Therefore, the award of alimony will not be disturbed.

■ Plaintiff requests attorney's fees on appeal. This issue is governed by R.Utah Ct.App. 33(a) in that this Court may award costs and attorney's fees to the prevailing party if we determine the appeal to be either frivolous or brought for delay. The instant appeal is without merit but the record must be examined to determine whether or not it is frivolous or brought for delay. In *Cady v. Johnson,* 671 P.2d 149, 151 (Utah 1983), the Court implied the awarding of attorney's fees required a finding that the suit was lacking in good faith and then defined "good faith" as:

(1) An honest belief in the propriety of the activities in question;

(2) no intent to take unconscionable advantage of others; and

(3) no intent to, or knowledge of the fact that the activities in question will, [sic] hinder, delay or defraud others.

The Court recognizes the right of a party to argue in an attempt to correct what that party deems to be error in the court below. However, when there is no basis for the argument presented and when the evidence or law is mischaracterized and misstated, the Court must question the party's motives. The record shows the trial judge

making Findings of Fact, dividing the property, and awarding support after a careful consideration of all the evidence. Defendant ignores this. Mr. Eames claims the trial court erred in awarding alimony to his wife. This attempt at deprivation of alimony is contrary to the intent of *Fletcher v. Fletcher*, 615 P.2d 1218 (Utah 1980), which was cited in defendant's brief. Surely a wife of thirty years deserves something more than being cast adrift in the sea of economic uncertainty without some long term support from a husband with superior earning potential. Defendant refuses to accept the evidence presented concerning plaintiff's interest in the Five Way Partnership. He continues to argue that the interest is of great and increasing value. He refuses to acknowledge the uncontroverted evidence that past distributions resulted from the sale of assets. He incorrectly argues for a valuation based upon the past rather than a valuation at the time of trial. Defendant also fails to recognize that he was awarded his own inheritance and fails to consider any income potential from that source.

Defendant further misstates the law when he argues that the alimony award cannot be changed in the future. *Utah Code Ann.* § 30–3–5 (1986) specifically reserves jurisdiction to the trial court to "make subsequent changes or new orders for the support and maintenance of the parties...."

The totality of defendant's argument compels this Court to find that he is attempting to take unconscionable advantage of his wife and that this appeal is frivolous. Therefore, it fails to meet the standards of good faith and R.Utah Ct.App. 33(a) applies.

We affirm the judgment of the trial court, award costs against the defendant, and remand to the trial court for a determination of plaintiff's attorney's fees which are ordered to be paid by the defendant.

GARFF, J., concurs.

ORME, Judge (dissenting in part):

I agree with the majority that the decision below must be affirmed. The trial court's disposition is well within the realm of reasonableness, and no abuse of discretion has been demonstrated. While I agree the appeal is not well taken, I am not convinced it was frivolously taken, and I dissent from the majority's imposition of attorney's fees against defendant.

Defendant had three major gripes with the trial court's decision. First, he did not think any alimony should have been awarded because his former wife is able-bodied and gainfully employed. Second, he contended that even if some award of alimony were appropriate, the court erred in providing that alimony continue until age 65 without regard to the possibility of remarriage, cohabitation, or other changed circumstance. Finally, he complained that although the trial court awarded him 50% of the equity in the marital home, it permitted plaintiff the right to live in the home for five years without any provision that interest would accrue on the equity share—the substantial investment—he had in the home.

As to the first issue, the alimony awarded by the trial court is really on the low end of what is appropriate under the doctrine reiterated in *Paffel* in view of the parties' ages and education, as well as the length of their marriage and the substantial disparity in their incomes. It is a modest award and defendant cannot have reasonably thought there was any remote possibility of its being disturbed on appeal.

The second issue is equally frivolous. Although the decree recited that alimony would continue until defendant's former wife reached 65 and did not expressly refer to earlier termination upon her remarriage or other change of circumstance, defendant's concern is allayed by statute. Utah Code Ann. § 30–3–5(5) (1986) provides that unless a decree of divorce "specifically provides otherwise," an award of alimony terminates upon remarriage. Section 30–3–5(6) provides that alimony also terminates upon cohabitation unless the arrangement is free of sexual contact. At oral argument, defendant asserted that his concern was that the "until age 65" language might

be deemed to mean the decree had "specifically provide[d] otherwise" and required alimony be paid until age 65 regardless of whether plaintiff remarried. Taking an appeal to obtain clarification and reassurance on that point is clearly overkill. Plaintiff immediately conceded that under the statute alimony would of course terminate before age 65 should the plaintiff remarry or take on a male roommate. Timely objection to the phraseology of the decree, motion for clarification, or even a letter to opposing counsel would have readily elicited all the comfort defendant desired on this score. And as the majority points out, the continuing jurisdiction provision of § 30–3–5(3) precludes the conclusion that, even absent remarriage or cohabitation, defendant would be obligated to keep paying alimony until his ex-wife reached age 65 regardless of changes in the parties' circumstances.

It is the third issue which, in my judgment, keeps defendant's appeal outside the realm of frivolousness. When a residence is a major marital asset, it has become quite common to order it sold and the net proceeds divided. When the needs of the parties or their children require, it is equally common to defer the time of sale. In the latter situation, however, and especially for a period as long as five full years, it is to be expected that the equity share of the spouse who does not have the pre-sale use of the home will accrue interest at some reasonable rate, even though that interest might not be payable until the sale proceeds are available. Such a provision is necessary to compensate the spouse who has to find someplace else to live without access to his or her substantial investment which remains tied up in his or her former home. Failure to include a provision for interest would, in my judgment, ordinarily constitute an abuse of discretion where the period during which sale is deferred is of more than incidental duration. Although I, like the majority, believe no abuse was committed in this particular case, chiefly because the alimony award as such was quite meager, I believe defendant was entitled to our review of that issue to make sure this was indeed one of those rare

situations where a "no interest" provision would pass muster.