**Glade STEVENS, Plaintiff and Respondent,**

v.

**Ellen I. STEVENS, Defendant and Appellant.**

No. 860138–CA.

Court of Appeals of Utah.

April 28, 1988.

Donald R. Jensen, McCullough, Jones, Jensen & Ivins, Orem, for defendant and appellant.

Eldon A. Eliason, Delta, for plaintiff and respondent.

Before ORME, JACKSON and BENCH, JJ.

## OPINION

JACKSON, Judge:

Ellen Stevens appeals from a judgment and decree of divorce, seeking a reversal or readjustment of the property distribution, alimony and child support provisions of the decree. We vacate portions of the judgment and decree and remand for entry of adequate factual findings in all three of these areas, including the assignment of values to specifically identified items of the distributed marital property.

Appellant and respondent were married for approximately six and one-half years, from March 26, 1977, until November of 1984. Three children were born to them, ranging in age from four to seven at the time of trial. When the parties married, he was engaged in farming and hay-hauling operations, which he continued to pursue for the duration of the marriage. Several hundred acres of land were farmed by him. At least twenty of those acres were bought by the parties. The remaining land was leased under various sharecropper arrangements with Milton Stevens, respondent's father, and four other landholders. Respondent retained seventy-five percent of crop proceeds and paid twenty-five percent to each landholder.

Prior to the marriage, appellant was employed in a garment factory and a dairy; she had previously held a clerical position in a dentist's office. She was thirty-one years old at the time of trial, had a high school education, and was unemployed. She called as a witness Dr. Cregg Ingram, a professor of educational psychology, who testified that she suffered from a learning disability which placed her academic skills in approximately the fifth grade range. Dr. Ingram predicted that she would have

difficulty acquiring a college education, but that she "has the capability to perform on about any level that she wants to perform." Ingram further opined that "[i]t's not uncommon to see her type of problems in college students." Appellant testified that she had not formulated plans for continued education or employment, and that, while she might be willing to earn income, she believed that her husband would continue to provide for her after the divorce.

The trial court granted a divorce to appellant on November 27, 1984, reserving the custody, property and support issues for trial. The main dispute at trial involved the identification and valuation of the marital estate. Appellant submitted an appraisal prepared by Thomas Kysar of Certified Business Appraisals, Inc. concerning the value of the parties' two homes, twenty acres of farmland, the "good will" value of the farming and trucking business, and the value of the equipment and harvest. Kysar testified that he received information about the identity and value of each appraised item from appellant, income tax returns from 1979 through 1983, documents filed with the county recorder, personal observations from some distance, conversations with dealers in the field, and discovery documents produced by respondent. Kysar acknowledged on cross-examination that his appraisal included values of hay and certain items of farming equipment that did not belong to the parties and that some of the values assigned to equipment were not the product of his personal observation. He estimated that respondent and appellant held $27,700 in cash, based upon an examination of the parties' prior tax returns.

Appellant testified that she had no knowledge of her husband's income or of their assets and liabilities. Respondent called several witnesses, including his father, who testified that the parties held no ownership interest in certain items of property claimed as marital assets by appellant in the appraisal prepared by Kysar. There was also testimony from the local bank branch manager, who reported substantial overdrafts in the personal and business banking accounts held by the parties. In written final arguments, respondent claimed that the marital estate's net worth was $84,858. Appellant argued that the marital estate's net worth totaled $498,697, of which $101,686 represented the good will value of the farming and trucking operations.

The trial judge issued a memorandum decision on January 28, 1985, describing the property award and deciding all other issues reserved for trial. He directed respondent's attorney to prepare findings of fact, conclusions of law and a judgment and decree consistent with the decision. The court found that the marital estate consisted of the two homes occupied by the parties, twenty acres of farm land, four vehicles, a 1980 Freightliner hay truck, "miscellaneous" farm equipment, and household furniture, fixtures and appliances. The court awarded appellant the newer home, all of the household furniture, fixtures and appliances, and the automobile driven by her. Respondent was awarded the older home, the 1980 Freightliner truck, the Ford trucks, the "miscellaneous" farm equipment, proceeds from the harvested crops, and the twenty acres of land. The court found that appellant failed to establish that respondent had any interest in property owned by his father, including real estate located in Fillmore and St. George, Utah. The court found there was substantial indebtedness against the marital estate and ordered respondent to pay the remaining debts against the home and the automobile awarded to appellant, as well as all business and marital debts incurred prior to the parties' separation. She was awarded $4,000 in attorney fees and $700 in private investigator fees.

Appellant objected to the proposed findings of fact, conclusions of law, and judgment and decree prepared by opposing counsel. She submitted, along with her objections, her own draft of the proposed documents. At the same time, she filed a memorandum of costs and disbursements which was objected to by respondent. On April 11, 1985, the trial court basically adopted respondent's version of the findings of fact, conclusions of law, and judg-

ment and decree, but amended two paragraphs to conform with language proposed by appellant regarding custody, visitation and income. The trial court approved all of her costs, except for the $2,531.15 paid to Certified Business Appraisals, Inc.

Appellant presents several issues on appeal: (1) did the trial court err by not assigning dollar values to each item of marital property and debt and by not determining the monthly income of respondent; (2) was there an equitable distribution of all items of marital property; (3) was there an abuse of discretion in setting alimony at $175 per month and child support at $175 per child per month; and (4) did the court err by not awarding appellant costs incurred in obtaining an appraisal of the parties' farming and hauling operations?

## I. PROPERTY VALUATION AND DISTRIBUTION

 Ordinarily, this court must assess the merits of appellant's claim of inequity in the distribution of marital property by reviewing the trial court's findings of fact and the values it assigned to the distributed items. *Jones v. Jones,* 700 P.2d 1072, 1074 (Utah 1985). "[W]hen one of the parties to a property distribution raises a serious question as to the value of one or more of the assets, the trial court's distribution of those assets should be based upon written findings of fact that will permit appellate review." *Id.* Where the trial court fails to do so, and appellant has not waived the claim,[1] the appropriate remedy is to remand for necessary factual findings. *Id.* at 1074–75. *See Peck v. Peck,* 738 P.2d 1050 (Utah Ct.App.1987).

The Utah Supreme Court recently faced such a problem in *Gardner v. Gardner,* 748 P.2d 1076 (Utah 1988), in which the appellant ex-wife challenged the property distribution by the trial court as inequitable. The trial court had failed to assign values to the ex-husband's retirement account and medical assets. The court pointed out that the failure to make find-

ings on all material issues is reversible error unless the facts in the record are clear, uncontroverted, and capable of supporting only a finding in favor of the judgment.. *Id.* at 1078 (quoting *Kinkella v. Baugh,* 660 P.2d 233, 236 (Utah 1983)). *See also Bastian v. King,* 661 P.2d 953, 957 (Utah 1983) ("Proper findings are essential to enable this Court to perform its function of assuring that the findings support the judgment and that the evidence supports the findings.").

 In this case, the trial court found that the marital property consisted of two homes and contents, four vehicles, twenty acres of land and miscellaneous farm equipment, all of which was found to be heavily indebted. The values of these assets were sharply disputed by the parties. Excluding the good will value of the farming and trucking operation, the parties' estimates of the total value of the marital estate differed by $312,153. Likewise, there was controverted evidence of the nature and amount of the indebtedness each party was ultimately ordered to pay. Nonetheless, in its memorandum decision and findings of fact, the trial court did not: (a) identify the items of marital property and debt; and (b) assign values to each item of distributed property and debt or a total value to the cumulative share awarded to each party.

We conclude, as did the *Gardner* court, that we cannot perform our reviewing function and determine whether the parties' property was equitably distributed without the trial court's detailed identification and valuation of the assets and debts awarded to each party. We therefore vacate that portion of the judgment and decree pertaining to property and debt distribution and remand for adequate factual findings. The trial court may adjust the property distribution as necessary after assigning values to ensure equity. *See Smith v. Smith,* 738 P.2d 655, 658 (Utah Ct.App.1987).

---

1. Because appellant was not the author of the findings, she did not waive her ability to challenge their adequacy on appeal. *See Jones,* 700 P.2d at 1074–75; *Boyle v. Boyle,* 735 P.2d 669, 671 (Utah Ct.App.1987).

Appellant also claims that the trial court erroneously failed to include as distributable marital property certain items identified in her brief as: the Honda three-wheeler, snowmobile, children's savings, credit union account, Mike Frazier debt, fuel tank, grain drill, crust buster plow, trailer, tractor, Morris rod weeder, compressor, ditcher, and hay lift. Respondent was awarded the "miscellaneous" farm implements and machinery. Those implements and machinery are not identified. Some of the items listed by appellant may fit within the definition of "miscellaneous" farm implements and machinery.

Due to lack of specificity in the court's findings, we are unable to determine whether these items were included in the property distribution. On remand, the trial court should clarify its disposition of these items appellant claims should be distributed as marital assets. *See Berger v. Berger*, 713 P.2d 695, 698 (Utah 1985).

## II. GOOD WILL

■ Appellant's next contention is that the trial court erroneously failed to value and distribute the farming and hay-hauling operations as a going concern. Thomas Kysar of Certified Business Appraisals, Inc. testified that respondent's farm operations had a "good will" value of $101,686, a figure derived from an examination of profit and loss statements attached to the couple's prior income tax returns. Appellant argues that the court should have distributed the good will value because the farming and hay-hauling operations are similar to other businesses which lease equipment or which provide services to the public.

Good will is the advantage or benefit which is acquired by an establishment, beyond the mere value of the capital, stocks, funds or property employed therein, in consequence of the general patronage and encouragement which it receives from constant or habitual customers on account of its location, or local position or reputation for quality, skill, integrity or punctuality. It is something in business which gives reasonable expectancy of preference in the race of competition.

*Jackson v. Caldwell*, 18 Utah 2d 81, 85, 415 P.2d 667, 670 (1966) (footnote omitted); *see also* 38 C.J.S. *Good will* § 1 (1943). Good will is to be distinguished from going concern value, going value, or going business. *Los Angeles Gas & Elec. Corp. v. Railroad Comm'n*, 289 U.S. 287, 313, 53 S.Ct. 637, 647, 77 L.Ed. 1180 (1933); 38 Am. Jur.2d *Good will* § 2 (1968). The presence of good will may be evidenced by proof of an on-going competitive enterprise having continuity of place and commercial name and enjoying a favorable reputation founded upon prior sales of goods or services. 38 Am.Jur.2d *Good will* §§ 4–8 (1968). The presence or absence of good will depends upon the facts and circumstances of the particular case. *See Jackson*, 18 Utah 2d at 86–87, 415 P.2d at 670–71. Where appropriate, the good will value of a business enterprise is subject to equitable distribution. *Gardner v. Gardner*, 748 P.2d 1076, 1080 n. 1 (Utah 1988). There can be no good will in a business that is dependent for its existence upon the individual who conducts the enterprise and would vanish were the individual to die, retire or quit work. *Jackson*, 18 Utah 2d at 86, 415 P.2d at 670.

Appellant's claim that the farming and hay-hauling operations have an asset of good will fails on two grounds. First, she failed to establish that her husband's business activities met the requisite elements forming the intangible asset known as good will. She testified that she understood respondent's farming operation to be "working out an interest in ... [the farm land] where he was the sole operator of it. If it was the financial buying of it with money, or putting all of the assets back into the farm, I'm not sure."

Gordon Ogier, a hay broker, testified that he purchased the hay presently available for sale, even though he described the quality of the hay as "mediocre," because respondent did not have a buyer and Ogier was in a position to buy the hay. Ogier testified at length that hay is purchased based upon the quality of the hay, the time

of the year, and the condition of the economy. He stated that he had purchased hay from several different farmers at varying prices.

Respondent testified that his farming and hay-hauling operations were performed under a lease arrangement and that the number of acres farmed by him depended upon the number of acres made available by the leaseholder. He testified that one leaseholder had sold part of the land formerly leased to him and that land held by another leaseholder had become unsuitable for farming. The success of his business, he opined, depended largely upon the economy and the weather.

Milton Stevens testified that he began a feed-hauling operation in 1935 under the name of "Stevens' Feed." That business was discontinued in 1965. Some time later, respondent assumed the "Stevens' Feed" name for purposes of convenience and to permit respondent to write checks against his father's checking account.

The appraisal prepared by Certified Business Appraisals, Inc. lists "business locations" among the twelve factors considered in determining the value of the farm and hauling operations, but it fails to connect location with the amount of patronage the businesses received. In summary, the evidence presented did not support a finding that respondent's business activities enjoyed the type of patronage or reputation found within the term "good will."

Second, appellant failed to distinguish "good will" value from the "going concern value" of the business. She asserts in her brief that expert testimony proved that the farming and hauling operations had value as a going concern. Kysar testified that his appraisal utilized standard procedures for valuing going concern businesses. Because appellant confused "good will" with "going concern value" and failed to meet her burden of proof, we conclude that appellant failed to prove the existence of an intangible asset in the form of good will.

### III. OWNERSHIP OF SECURED PROPERTY

Appellant's final claim of error with respect to the marital property is that the trial court erroneously found that certain items of farm equipment and machinery were owned by respondent's parents and were not a part of the marital estate. Paragraph six of the findings of fact states:

> The Court finds that defendant has failed to establish that the plaintiff Glade Stevens has any interest in and to the property identified on the security agreement to Milton Stevens....

> The Court finds that although Glade Stevens, plaintiff herein, has had the right to use many of the items in his farming operation and has economically benefited from them, there has been no showing that he has any equity interest in and to those items to which the defendant has any proper claim at this time.

In order to prevail on appeal, the party challenging the findings of fact made by the trial judge must show that they are clearly erroneous, after giving "due regard ... to the opportunity of the trial court to judge the credibility of the witnesses." Utah R.Civ.P. 52(a). *See State v. Walker,* 743 P.2d 191, 193 (Utah 1987); *Lemon v. Coates,* 735 P.2d 58, 60 (Utah 1987); *Davies v. Olson,* 746 P.2d 264, 267 (Utah Ct. App.1987). *See also Newmeyer v. Newmeyer,* 745 P.2d 1276, 1277 (Utah 1987). A finding is clearly erroneous if it is against the great weight of the evidence or if we are otherwise definitely and firmly convinced that a mistake has been made. *State v. Walker,* 743 P.2d at 193.

There is substantial record evidence to support the trial court's finding that certain items of farm equipment and machinery, which appellant claimed were owned by respondent, were actually owned by his parents. Over the course of two days of trial, the parties presented conflicting testimony and evidence concerning the identification and ownership of this property. The record shows that the trial judge properly identified the marital property after a careful consideration of all the evidence. Because appellant has failed to show that the court's determination of ownership is clear-

ly erroneous, we affirm the trial court's finding that the farm equipment and machinery listed in the security agreement were not included in the marital estate.

## IV. ALIMONY AND CHILD SUPPORT

■ Appellant's next assignment of error is that the trial court abused its discretion in setting alimony in the amount of $175 per month and child support in the amount of $525 per month.

The purpose of alimony is to "equalize the standard of living for both spouses, maintain them at their present standard as much as possible, and avoid the neccesity of one spouse receiving public assistance." *Boyle*, 735 P.2d at 671; *accord Gardner*, 748 P.2d at 1081. In setting an award of alimony, the trial court may exercise considerable discretion, and an award will not be overturned absent a showing of a clear and prejudicial abuse of discretion. *Paffel v. Paffel*, 732 P.2d 96, 100 (Utah 1986); *Eames v. Eames*, 735 P.2d 395, 397 (Utah Ct.App.1987).

■ In exercising its discretion in determining the amount of alimony to be awarded, the trial court must consider the financial condition and needs of the spouse claiming support, the ability of that spouse to provide sufficient income for him or herself, and the ability of the responding spouse to provide the support. *Paffel*, 732 P.2d at 101. Failure to consider these factors constitutes an abuse of discretion. *Id.* Likewise, in setting a child support award, the court must consider the factors set forth in Utah Code Ann. § 78–45–7(2) (1987). The trial court's failure to consider these statutory factors is also an abuse of discretion. *Jefferies v. Jefferies*, 752 P.2d 909 (Utah App.1988).

The Utah Supreme Court has clearly held that the trial court must make findings on all material issues. *Acton v. Deliran*, 737 P.2d 996 (Utah 1987). These findings "should be sufficiently detailed and include enough subsidiary facts to disclose the steps by which the ultimate conclusion on each factual issue was reached." *Id.* at 999 (quoting *Rucker v. Dalton*, 598 P.2d 1336, 1338 (Utah 1979)).

In the case before us, the trial court made only three limited, conclusory findings regarding alimony and child support:

2. The Court finds that a reasonable sum for the plaintiff to pay to the defendant for the support and maintenance of each child is the sum of $175 per child per month. . . .

3. The Court further finds that it is reasonable for the plaintiff to pay to the defendant alimony in the sum of $175 per month. . . .

8. The Court finds that although the income tax returns supplied by the plaintiff on their face may not justify the award of support and alimony hereinabove provided, the Court has determined from the evidence submitted at the trial, that a substantial amount of tax-free income is generated by the plaintiff's activities, and that he can afford to pay the sums for support and alimony as hereinabove provided.

Based upon these findings, respondent was ordered to pay $175 per month in alimony; to pay $175 per child per month in child support; to pay all of the marital debts and obligations; to provide medical and dental insurance for the children and one-half of expenses not covered by insurance; and finally, to pay $4,700 toward appellant's attorney fees and court costs. As previously stated, respondent was awarded the farm and trucking operations.

The findings of fact made by the trial court do not specifically set forth appellant's financial condition and need for support, including her earning capacity, or respondent's income and ability to pay. Such a failure to address the *Paffel* factors explicitly in the findings of fact requires remand to the trial court. *Gardner*, 748 P.2d at 1082. The trial court's failure to make explicit findings regarding the statutory factors pertinent in a child support determination requires the same relief. *Jefferies*, at 911.

Under the *Acton* standard, the trial court's sparse findings are clearly inadequate to demonstrate that the trial court considered the relevant factors in determin-

ing both the alimony and child support awards. Detailed findings of fact and conclusions of law are necessary for this reviewing court to ensure that the trial court's discretionary determination of the alimony and child support awards was rationally based.[2] *See Martinez v. Martinez,* 728 P.2d 994 (Utah 1986); *see also Davis v. Davis,* 749 P.2d 647, 648 (Utah 1988).

We therefore vacate those portions of the judgment pertaining to alimony and child support and remand this case to the district court for specific findings that support new judgment and decree provisions addressing both these issues.

## V. APPRAISAL COSTS

Appellant's final claim on appeal is that the trial court erred by not awarding her costs incurred in obtaining an appraisal of the parties' farming and hay-hauling operations. Generally, costs are "allowable only in the amounts and in the manner provided by statute." *Frampton v. Wilson,* 605 P.2d 771, 773 (Utah 1980). The term "costs" as used under Utah R.Civ.P. 54(d)(1) has been defined as court and witness fees which are required to be paid and for which a statute authorizes payment. *Id.* at 774. Other expenses incurred in the preparation of litigation, even though necessary, are not chargeable as costs. *Id.; Hatanaka v. Struhs,* 738 P.2d 1052, 1055 (Utah Ct.App.1987).

Appellant testified that she had little or no knowledge about the parties' earnings, assets or liabilities. After this suit was filed, she secured the services of an appraiser who was able to testify at length about his opinion of the identity, nature and net value of the marital estate after his inspection of various property and documents. His research and preparation, although essential to the presentation of appellant's case, cannot be considered a "cost."[3] *See Hatanaka,* 738 P.2d at 1055. We therefore affirm the trial court's determination of appropriate costs.

## CONCLUSION

Appellant's remaining arguments are without merit.[4] The portions of the judgment and decree relating to property division, alimony, and child support are vacated. The case is remanded for findings in accordance with sections I and IV of this opinion. No costs awarded.

BENCH and ORME, JJ., concur.

---

2. In support of her argument that the amount of child support awarded by the trial court is insufficient, appellant attaches to her brief a copy of the Uniform Child Support Schedule under Utah Code Ann. § 78-45-7(4) (1987). That section authorizes the use of a statewide assessment formula, established by the Utah Department of Social Services, to determine the amounts of temporary child support pending a final order. It is inapplicable to permanent orders or this case. Furthermore, attachment of the schedule to appellant's brief is improper since it was not offered into evidence at trial. *See Reick v. Reick,* 652 P.2d 916, 918 (Utah 1982); *Hansen v. Hansen,* 736 P.2d 1055, 1056 (Utah Ct.App.1987).

3. Appellant may, of course, recover the statutory witness fee plus mileage incurred by the appraiser. *See Kerr v. Kerr,* 610 P.2d 1380, 1384 (Utah 1980).

4. Appellant also claims that the trial court erred by not establishing a maximum amount of deductible permitted under the medical and dental insurance respondent is required to provide for the children's benefit. Both parties testified about the need for health insurance, but neither party raised the issue of deductible levels during trial or within proposed findings of fact. After findings of fact were entered, appellant sought to have the insurance provisions amended to include a ceiling on the amount of deductible. That motion was denied. The asserted inequity cannot be deemed an abuse of discretion. The trial court ordered respondent to pay one-half of the children's health expenses not covered by insurance. It is to both parties' advantage that the insurance deductible be as low as possible.