Kathleen Marie BERGER, aka Kay Berger, Plaintiff and Respondent,

v.

Philip Herman BERGER, Defendant and Appellant.

No. 18627.

Supreme Court of Utah.

July 8, 1985.

Nolan J. Olsen, Midvale, for defendant and appellant.

John D. Parken, B.L. Dart, Salt Lake City, for plaintiff and respondent.

HOWE, Justice:

Defendant, Philip Herman Berger, appeals from the property division made in this divorce action. He seeks either a new trial or a redistribution of the marital estate.

When the Bergers were married in 1969, plaintiff, Kathleen Marie Berger, was a thirty-two-year-old legal secretary with a high school diploma. Defendant was twenty-eight years old, worked as a television repairman, and had completed three years toward a degree in electrical engineering. Neither brought assets of substantial value into the marriage, except that Mrs. Berger had a $2,000 equity in a house. He returned to school and obtained his degree. During their early years of marriage, both worked to support the family. They also worked together purchasing and renovating several residential properties. Profits from these initial properties helped support their later investments and business ventures. In 1974 he formed Enduratek, Inc., to manufacture and sell ski lift safety equipment that he had invented. She obtained a real estate license and later began her own real estate brokerage, making a substantial income as a broker and from investments in property. For the most part, the parties used her income and the income from their various real estate investments to support the family. Because Enduratek was not yet showing a profit, he drew no salary, and she loaned $86,912 from her earnings to keep it alive, which amount was evidenced by promissory notes from the corporation.

Both parties were awarded a divorce from the other on grounds of mental cruelty. The court adopted without alteration plaintiff's proposed findings of fact and conclusions of law respecting division of the property. Defendant requested a new trial or a modification of the findings. The trial court modified two of the findings and denied the request for a new trial.

Although this case is in equity and we are free to review both the law and the facts, Utah Const. art. VIII, § 9, we place a presumption of validity upon the trial court's actions in divorce cases. Thus, the burden is on appellant to show error, and we will overturn the trial court's findings of fact only if they are contrary to the clear preponderance of the evidence. *Mitchell v. Mitchell,* Utah, 527 P.2d 1359 (1974); *Harding v. Harding,* 26 Utah 2d 277, 488 P.2d 308 (1971); *Wiese v. Wiese,* 24 Utah 2d 236, 469 P.2d 504 (1970); *accord Eastman v. Eastman,* Utah, 558 P.2d 514 (1976); *Fletcher v. Fletcher,* Utah, 615 P.2d 1218 (1980); *see also Stanley v. Stanley,* 97 Utah 520, 94 P.2d 465 (1939); *Olivero v. Eleganti,* 61 Utah 475, 214 P. 313 (1923). We will overturn the trial court's judgment where there has been a misunderstanding or misapplication of the law resulting in substantial and prejudicial error or where there has been such an abuse of discretion that an inequity or injustice has resulted. *Fletcher,* 615 P.2d at 1222; *Harding,* 26 Utah 2d at 280, 488 P.2d at 310.

The trial court, at the urging of the plaintiff, attempted to divide the marital estate 60 percent to the plaintiff and 40 percent to the defendant. It did this because of the extraordinary work effort made by the plaintiff during the marriage and the fact that she had actually produced in income considerably more than the defendant. The defendant does not seriously quarrel with these percentages as a basis for division. However, he contends that because several of the assets that were awarded to him were overvalued, he actually received much less than the 40 percent which the court intended. We shall separately examine the value of each of these assets.

## ENDURATEK, INC.

All of the outstanding stock of Enduratek, Inc. was owned by the parties, and the trial court awarded it to defendant. Plaintiff presented expert testimony regarding the value of the corporation. Although her expert had access to all of Enduratek's records, he valued the corporation as of March 31, 1981, the fiscal year end and one year prior to trial. The year-old financial records showed that Enduratek had a division known as International Alpine Marketing. Enduratek had hired Bill Moss who was formerly in charge of snow grooming at Snowbird Ski Resort and who had a franchise to sell snow grooming equipment. Alpine was created to hopefully piggyback sales of Enduratek's ski lift safety equipment with the snow grooming equipment. Defendant testified that the Alpine division was sold to Moss in the summer of 1981 after this action was filed due to the following circumstances. Moss held the franchise from the snow grooming equipment manufacturer. He had the expertise in snow grooming. He had the contacts at the resorts where the Alpine division attempted to sell its equipment. The Alpine division was worthless without him. When Moss saw that the defendant, following his separation from the plaintiff, was transferring funds from the Alpine division to support Enduratek, he feared that there would not be sufficient funds to pay his salary or to keep the Alpine division operating. Heated arguments followed, culminating in the sale of the Alpine division to Moss for $12,500.

Since the plaintiff's expert valued Enduratek as of March 31, 1981, and the sale to Bill Moss took place in the summer of 1981, the expert included Alpine in his analysis and appraisal. According to the expert, the Alpine division accounted for about 60 percent of Enduratek's earnings. He appraised Enduratek at $105,000, and the trial court adopted that figure as its valuation. The court expressly indicated that it did not believe the testimony of the defendant that Alpine had been sold to Moss for $12,500.

The trial court erred in valuing Enduratek as of March 31, 1981. The marital estate should be valued as of the time of the divorce decree. *Fletcher,* 615 P.2d at 1222–23. Thus, the plaintiff's expert's opinion was inconclusive of Enduratek's

value for the purposes of the property division since it reflected Enduratek's value a full year before trial. The defendant attempted but failed to place into evidence his valuation of Enduratek's assets as of the time of the trial. The trial court was consequently left with no admissible evidence as to the value of Enduratek as of March 30, 1982. A new trial must be had to determine its value as of that date. A balance sheet of the corporation as of March 30, 1982, will assist the court in determining whether the Alpine division was a part of Enduratek at that time and will eliminate the speculation which the parties forced upon the court when both failed to adduce such a balance sheet.

## PATENTS

■ Two patents owned by defendant which at one time were used by Enduratek were found by the court to be worth $17,884 and were awarded to him. Defendant testified that the patents were valueless at the time of trial, and he offered to give them to plaintiff. However, plaintiff maintained that they were worth $17,884, which she testified was the attorney fee paid in procuring them. The amount of attorney fees had little, if any, relevance to the value of the patents. Defendant invented Enduratek's technology and operated the business. His testimony regarding the patents' value was the only relevant evidence adduced at trial. We therefore hold that the evidence established that the patents were worthless and that the trial court erred in assigning them a value of $17,884.

## P & K LEASING

■ The parties formed P & K Leasing, apparently a partnership, to gain tax advantages by leasing equipment to Enduratek. Although defendant drew no salary from Enduratek, the parties' joint after-tax income was greatly increased through this arrangement. The court valued P & K Leasing at $37,728 and awarded all its assets to defendant. However, no evidence established that amount as its value. That figure appeared only in exhibit P–12, which

was a list of assets that plaintiff proposed be awarded to defendant. Opposite each item, a value was stated. A single line in the exhibit dealt with P & K Leasing: "P & K Leasing (Equipment at Cost-Tax Returns) 37,728.00." However, there were no tax returns in the record showing the value of P & K Leasing at that figure or any other figure. Plaintiff did not testify as to the value of P & K Leasing or offer any evidence other than exhibit P–12. On the other hand, defendant testified that P & K Leasing was worth the fair market value of its equipment minus amounts owing thereon which he fixed at $4,535. Thus the only evidence was that P & K Leasing was worth $4,535, and the trial court erred in valuing it at $37,728.

## DEFENDANT'S PERSONAL BELONGINGS

Defendant complains that the trial court did not award to him certain items of personal property which he characterizes as his personal belongings. Many of these items are listed in his brief, and they consist mainly of garden equipment, tools, a classical record set, chairs, stereo equipment, a musical instrument, and a clock. None of these items were specifically mentioned in the decree of divorce. The decree did award to the plaintiff all furniture, furnishings, and appliances located at their residence and further awarded to each of the parties his or her "clothing, personal effects and belongings, together with any other items of personal property not specifically set forth herein." Since the decree lacked specificity, we are unable to determine whether the items sought by the defendant fall within the category of furniture, furnishings, and appliances, which were all awarded to the plaintiff, or whether they fit into the category of "personal effects and belongings, together with any other items of personal property not specifically set forth herein." Inasmuch as the case must be remanded for further proceedings, the court should clarify its award of the items sought by the defendant.

## REAL PROPERTY

■ The defendant further contends that certain pieces of real property which were awarded to the plaintiff were undervalued. We have examined these valuations and refrain from disturbing any of them since all were based on competent evidence. Their value was in issue at the trial, and the court, within its rightful discretion, in each instance adopted the valuation urged by the plaintiff.

We have examined other assignments of error made by the defendant and find them to be without merit. The case is remanded to the trial court to conduct a new trial on the issue of the valuation of the Enduratek, Inc. stock as of the date of trial, March 30, 1982. Thereafter, the court shall amend its findings of fact to reflect that valuation and the value of the patents and P & K Leasing as we have determined in this opinion. After making these adjustments, the trial court shall modify the property distribution to effect a 60 percent award to the plaintiff and a 40 percent award to the defendant. Further, the court shall clarify its award of the items sought by defendant. Costs are awarded to the defendant.

HALL, C.J., and STEWART, and DURHAM, JJ., concur.

ZIMMERMAN, J., does not participate herein.