**Verlora CARLTON, Plaintiff and Respondent,**

v.

**Frank Hayden CARLTON, Defendant and Appellant.**

**No. 860247–CA.**

Court of Appeals of Utah.

June 3, 1988.

B.L. Dart (argued), John D. Parken, Salt Lake City, for defendant and appellant.

Paul H. Liapis, John C. Green (argued), Gustin, Adams, Kasting & Liapis, Salt Lake City, for plaintiff and respondent.

Before DAVIDSON, JACKSON and GREENWOOD, JJ.

## OPINION

GREENWOOD, Judge:

Defendant, Frank Hayden Carlton, appeals the trial court's property distribution in a divorce proceeding, claiming that the trial court did not enter sufficient findings of fact and inequitably awarded property. We vacate the property award and remand.

Plaintiff, Verlora Carlton, and defendant were married on June 18, 1979, separated in December 1984 and divorced in August 1986. At the time of trial, plaintiff was forty-nine and defendant was sixty-four. Throughout the marriage, defendant worked as a certified public accountant and earned over $100,000 gross annual income during most of the marriage. Plaintiff did not work during the marriage, but before the marriage she had operated a cosmetology shop and earned approximately $1,100 gross income per month. At the time of trial, plaintiff's gross income was $800 per month.

Defendant testified at trial that his premarital assets totalled $761,925 while plaintiff testified that she had $24,935 in assets at the time of the marriage. Both parties presented exhibits regarding the values of their assets. Defendant claimed to have gained only about $75,000 in additional assets during the course of the marriage. However, plaintiff claimed that she was entitled to assets totaling $201,591.85 in value as her share of the parties' marital estate. Without placing a value on the items constituting the parties' assets, the court found that "the marital appreciation in the assets which the parties acquired during the marriage and/or maintained during the marriage, totals $255,327.00." The court then subtracted plaintiff's premarital assets of $27,228 from that amount and awarded plaintiff one-half of the adjusted marital estate of $228,099 plus the value of her premarital assets, for a total of $144,277.

On appeal, defendant claims the trial court erred in failing to make sufficient findings of fact as to the value of the parties' assets and that the property distribution is inequitable because it distributes a substantial portion of defendant's premarital assets to plaintiff.

In divorce proceedings, the trial court is given considerable discretion in fashioning an equitable property distribution, *Jones v. Jones,* 700 P.2d 1072, 1074 (Utah 1985); *Sampinos v. Sampinos,* 750 P.2d 615, 618 (Utah Ct.App.1988), and its findings will not be disturbed absent an abuse of discretion. *Boyle v. Boyle,* 735 P.2d 669, 670 (Utah Ct.App.1987). The trial court must make findings on all material issues, and its failure to do so constitutes reversible error "unless the facts in the record are 'clear, uncontroverted, and capable of supporting only a finding in favor of the judgment.'" *Acton v. J.B. Deliran,* 737 P.2d 996, 999 (Utah 1987) (quoting *Kinkella v. Baugh,* 660 P.2d 233, 236 (Utah 1983)). In

addition, the findings must be sufficiently detailed and consist of enough subsidiary facts to reveal the steps the court took to reach its conclusion on each factual issue presented. *Acton,* 737 P.2d at 999; *Lee v. Lee,* 744 P.2d 1378, 1380 (Utah Ct.App. 1987). Finally, the trial court's failure to include property valuations in divorce actions may constitute an abuse of discretion sufficient to require remand for determination. *Jones,* 700 P.2d at 1074; *Boyle,* 735 P.2d at 671.

This divorce proceeding involved numerous different assets including at least thirty different stocks and bonds, six savings accounts, four checking accounts, several bronze statutes, the parties' residence, IRAs and a Keogh plan. Defendant's exhibits valued the assets at the time of the marriage and at the time of the separation, which was a year and a half before the divorce decree was entered. Defendant's exhibits also separately itemized the securities acquired during the marriage. Plaintiff's proposed property distribution listed only a portion of the parties' assets apparently valued as of the trial in December 1985.

The testimony at trial and the exhibits clearly indicate that the parties hotly contested the values of many of the assets. For example, the parties' exhibits differ on the value of the E.F. Hutton Investment account. Plaintiff's exhibit values the E.F. Hutton Investment account at $113,000, while defendant's exhibit indicates that the account decreased $62,400 in value during the parties' marriage and was worth only $29,217 at the time of the separation. Defendant conceded, however, that the E.F. Hutton Investment account increased in value from $29,217 at the time of the separation to $113,000 at the time of the trial but testified that he believed the estate should be valued as of the date the parties separated. The trial court found that the parties acquired "stocks and bonds in an investment account with E.F. Hutton Investment Company" during the marriage but did not place a value on the account. In addition, the findings do not state whether the court valued the E.F. Hutton Investment account as of the time of the

separation or as of the time of the divorce. The values of many other assets were also controverted.

Based on the trial court's findings, we cannot determine how the court arrived at its conclusion that the marital assets had appreciated by $255,327 during the marriage. The trial court did not clearly state which assets were marital or premarital nor did it value all of the individual assets. The general rule is that:

> Premarital property ... may be viewed as separate property, and in appropriate circumstances, equity will require that each party retain the separate property brought to the marriage. However, the rule is not invariable. In fashioning an equitable property division, trial courts need consider all of the pertinent circumstances.

*Burke v. Burke,* 733 P.2d 133, 135 (Utah 1987).

Because we cannot determine how the court arrived at the amount of appreciation of the marital estate during the parties' seven year marriage, we are also unable to determine whether the court allowed each party to retain all or some portion of his or her separate property. Although the findings indicate that the parties were awarded most of what was claimed as premarital property, the findings do not specify whether some of the assets, such as the savings and checking accounts, were premarital property. For example, the court found that the parties had acquired "numerous bank accounts" during the marriage, but did not specify if all of the bank accounts distributed in the divorce were acquired during the marriage. In the event the court awarded plaintiff some of defendant's premarital property, the court must follow *Burke* and make findings which explain the circumstances warranting an award of defendant's premarital property to plaintiff.

In addition, we cannot determine from the court's findings if the parties' assets were valued at the time of the divorce decree or at the time of the separation. Generally, assets are valued at the time of

the divorce decree. *Berger v. Berger,* 713 P.2d 695, 697 (Utah 1985); *Peck v. Peck,* 738 P.2d 1050, 1052 (Utah Ct.App.1987). "However, where one party has dissipated an asset, hidden its value, or otherwise acted obstructively, the trial court may, under its broad discretion, value the property at an earlier date, i.e., separation." *Id.* The findings in this case do not indicate whether the court valued the assets at the time of the divorce or the time of the separation. However, it appears from the evidence received by the court that some of the assets were only valued as of the time of the parties' separation.

Further, the facts in the record are not "clear, uncontroverted, and capable of supporting only a finding in favor of the judgment." *Acton,* 737 P.2d at 999. The dissent urges application of the methodology utilized in *Olson v. Olson,* 704 P.2d 564 (Utah 1985). In *Olson,* the court failed to make a finding of the wife's financial needs in determining an alimony award. The Utah Supreme Court, nevertheless, affirmed the alimony award, finding it was appropriate if the court assumed the wife's claimed financial need, which the husband disputed, was true.

The *Olson* approach is not applicable in this case where the parties disputed many values, and we would have to speculate on the trial court's view as to the value of each asset. Unlike *Olson,* we cannot simply assume as true one disputed value. Instead, we must speculate on numerous disputed facts. In addition, the *Olson* Court found that if it added a finding of financial need in the amount claimed by the wife, the Court would not disturb the alimony award. This case differs because we cannot determine if the property distribution was fair and equitable without a valuation of each asset and a designation as to which property was premarital and marital. Furthermore, the difficulty in applying *Olson* is compounded by the court's failure to distinguish between separation and time of trial valuations.

Therefore, we hold that the trial court's failure to make findings as to the value of the parties' assets constitutes reversible er-

ror requiring this Court to remand for entry of additional findings. On remand, the court must make findings as to the value of the parties' various assets, and, if the court awards plaintiff any of defendant's premarital property, the court must enter findings which explain the circumstances justifying such award. *See Burke,* 733 P.2d at 135. In addition, the court's findings must indicate whether the court is valuing the parties' assets as of the time of the divorce or as of the time of the separation.

Judgment vacated as to the property award and remanded for further proceedings consistent with this opinion.

DAVIDSON, J., concurs.

JACKSON, Judge (dissenting):

I depart from the majority at two points. First, I am concerned that remand of this case will impose an unnecessary burden on the judicial system and the parties. The remand will require a new trial unless the judge who originally heard this matter, former District Court Judge Jay E. Banks, can be recalled from the ranks of the retired. Another trial judge will find it impossible to dredge from the depths of the record all the specific findings ordered by the majority.

Secondly, we need not impose any burden upon Judge Banks or one of his colleagues in this case. The law is clear in Utah that, in order to permit appellate review, a trial court's distribution of marital assets whose values are contested by the parties should be based upon specific written findings as to what those values are. *Jones v. Jones,* 700 P.2d 1072, 1074 (Utah 1985). In *Jones,* the Court concluded that the remedy of remand was appropriate because "[i]f the trial court accepted one set of values, the [appellant] wife was clearly awarded too little; if another set was adopted, it is possible that the trial court did not abuse its discretion." *Id.*

Four months after *Jones,* the Utah Supreme Court decided *Olson v. Olson,* 704 P.2d 564 (Utah 1985), in which the appellant ex-wife challenged the amount of alimony awarded her. She claimed that the

trial court had failed to consider her financial condition and needs, one of three factors that must be considered by the trial court in fixing the amount of alimony. *Id.* at 566. The unanimous Court agreed that the trial court's findings on this factor were inadequate, but it did not end its analysis there and remand to the district court. Instead, it accepted her evidence on these issues as true and reached her substantive claim, ultimately affirming the amount of the trial court alimony award:

> Turning to the record in the absence of sufficient findings, we find conflicting evidence on some factual issues material to a determination of the wife's financial condition and needs. Nevertheless, even accepting as true, for purposes of review, the [appellant] wife's evidence on these issues, we find no abuse of discretion in the amount of alimony awarded.

*Id.* at 567. This approach to the disposition of the appeal makes sense. The trial court's findings must be supported by the evidence. Accordingly, the best an appellant could do—if adequate findings were made at trial or on remand—is to have the court accept his or her evidence on the disputed point. If even that version of the facts does not justify disturbing the trial court's judgment, then there is no reason for the appellate court to send the case back for more specific findings that will not ultimately change the outcome of the case.

The Utah Supreme Court applied this commonsense approach again in *Claus v. Claus*, 727 P.2d 184 (Utah 1986). As in the case before us, the appellant husband in *Claus* challenged the trial court's distribution of marital property. He complained that the trial court had failed to make findings as to the values of each party's premarital assets and the increase of those values during the marriage. The trial court had totalled the equities of all the parties' properties and then awarded nearly half of the total to each. *Id.* at 185. In its per curiam opinion, the Utah Supreme Court did not automatically remand for specific findings on the disputed values of individual assets. It looked to the entire record and affirmed the trial court's property distribution, concluding that it was "eminently fair" to the appellant. *Id.*

Subsequent to *Olson* and *Claus*, the Utah Supreme Court explicitly held that the failure to make findings on all material issues is reversible error unless the facts in the record are clear, uncontroverted, and capable of supporting only a finding in favor of the judgment. *Acton v. Deliran*, 737 P.2d 996, 999 (Utah 1987). In applying the *Acton* standard in appeals challenging the property distribution in a divorce decree, the Court has not indicated that the sensible appellate practice used in *Olson* is to be thrown out the window, resulting in meaningless and burdensome remands to the district courts.

In *Gardner v. Gardner*, 748 P.2d 1076 (Utah 1988), for example, the appellant wife challenged the trial court's complete failure to assign values to, and to distribute as marital property, the husband's retirement account and medical assets where the parties' figures varied considerably. The Court remanded *Gardner* for the entry of specific findings, concluding that it could not perform its reviewing function and determine whether the parties' property was equitably distributed without more detailed findings regarding the valuation of assets. *Id.* at 1080. Just as it had in *Jones*, the Court pointed out that the award to respondent Mr. Gardner of all his retirement funds and medical assets *might* ultimately turn out to be proper and equitable if the trial court adopted his evidence as to their value. *Id.* But the appellate court might, presumably, agree with appellant Mrs. Gardner that the trial court's property award was inequitable if the trial court findings adopted her evidence of their values.

No such problem is presented by this case. Even if we accept appellant's version of what the value of the marital estate and the individual asset valuations should have been, the overall marital property distribution is eminently equitable to him. Therefore, additional findings are not needed to support affirmance of the trial court's award.

The majority unfortunately elevates form over substance by slavishly and, I believe, misguidedly applying *Acton*, without regard for appellant's only substantive issue on appeal, namely, whether the trial court's apportionment of the marital property "was clearly unjust or a clear abuse of discretion." *Gardner*, 748 P.2d at 1078. The majority insists on having additional and more specific findings in order to understand the trial court's ultimate total of $228,099 in marital property, one-half of which was awarded to each party. All they really want are some intermediate mathematical calculations.[1] To justify their remand, my colleagues have clothed this case in the raiment of complexity. "[E]ven Solomon in all his glory was not arrayed like one of these." *Matthew* 6:29. But we need not undress the entire record to expose the equity of the trial court's ultimate marital property finding.

Judge Banks's findings contain an orderly, step-by-step route of factual conclusions that leads to the ultimate disposition without detour. Finding 6 identifies Mrs. Carlton's premarital property, which the court awarded to her. Finding 13 valued her property at $27,228. Finding 7 identifies Mr. Carlton's premarital property, which the court awarded to him; no value was fixed. Findings 8 through 12 identify the properties which the parties acquired during the course of their marriage and make some specific offsetting awards, leaving an adjusted marital estate of $228,099.[2] A total of $144,277 was awarded to Mrs. Carlton, i.e., $114,049 (one-half the adjusted marital estate) plus her premarital property of $27,228. In Finding 14, the court subtracted from this figure $12,041 in assets she took at the time of separation, leaving her a balance of $129,236. The remaining marital assets are identified as specific bank and investment accounts with fixed values from which Mrs. Carlton received the balance of her marital property award, including $99,124.29 from their E.F. Hutton account.[3]

Viewed in light of the values assigned by Mr. Carlton, the trial court's property distribution is patently equitable. Appellant elected to use values calculated as of the date of the parties' separation, although assets are generally valued as of the time of the divorce decree. *See Berger v. Berger*, 713 P.2d 695, 697 (Utah 1985). Mr. Carlton's values were submitted via Exhibit 35D, consisting of underlying itemized schedules summarized onto a front sheet. His summary valued his premarital property at $761,925 at the time of marriage, increasing to $837,732 at separation, for a total $75,807 increase during the marriage. But, assigning his specified values to the assets the court awarded him yields a total value of $889,000.[4] Thus computed, he received $127,000 more than his premarital value. This compares favorably with the court's award to him of $114,049, one-half of the adjusted marital estate.

**1.** The majority states, "we cannot determine how the court arrived at its conclusion that the marital assets had appreciated by $255,327 during the marriage." The trial court valued Mrs. Carlton's premarital property at $27,228 and awarded it to her. The majority has included her premarital property in the "appreciation." The trial court, in finding 13, found a marital estate of $228,099 and awarded Mrs. Carlton one-half, i.e., $114,048.

**2.** The values used by Judge Banks in reaching this total are contained in Mrs. Carlton's Exhibit 14P, her itemization of the "assets of parties" and her asserted values for each asset, totalling $403,000. She excluded her premarital property and his premarital Bear Lake home. Judge Banks subtracted $175,000 from her total, comprised of the following items: $38,000 (for the K Street home awarded to him as premarital property); $10,000 (for the Saratoga, Wyoming lot

awarded to her); $14,000 (for the 1985 Lincoln awarded to him); and $113,000 (for the value at trial of the E.F. Hutton account created from his premarital savings). The $228,000 balance ($403,000 minus $175,000) divided equally between the parties represents the value of all the remaining marital assets, including a one-half interest in land in Carbon County, numerous liquid asset accounts, and several bronzes and sculptures.

**3.** As acknowledged by the majority, Mr. Carlton testified that the E.F. Hutton account balance was $113,000 at time at trial. Mrs. Carlton's evidence fixed the same value.

**4.** This figure gave Mr. Carlton the benefit of a claimed $100,000 loss of value on his Bear Lake home, i.e., from $300,000 to $200,000 during the marriage.

Acceptance of Mr. Carlton's own values reveals no serious inequity or abuse of discretion in the property distribution as far as he is concerned. Although Mrs. Carlton might have some reason to complain, she has not cross-appealed to challenge the trial court's award.[5] The findings show that the trial court considered each item of property. The premarital property was delineated and awarded respectively to each party. Hers was assigned a total value; his was not. Individual valuations of their premarital assets were not material since the ultimate issue was the equitable division of marital property, not premarital property.

Where the asset values claimed by appellant at trial show he received an equitable share of the marital property and no clear abuse of discretion is otherwise proven, we ought to defer to the trial court's property distribution. The judgment of the trial court should be affirmed.

---

5. The property distribution is also eminently fair when reviewed on the basis of marital income. The majority identifies a seven-year marriage and acknowledges that Mr. Carlton "earned over $100,000.00 gross annual income during most of the marriage." Their tax returns show that his adjusted gross income ranged from a high of $117,000 to a low of $88,000. The parties maintained a frugal lifestyle, except for regular business trips that were expensed through his CPA business. Most of the approximately $700,000 of income earned during the marriage was invested in liquid assets. The court found an accumulation of only $228,000. I find it inconceivable that the remaining $472,000 of income was spent by these two people for consumables during their short marriage. Mrs. Carlton was awarded no alimony. Her $114,000 property award, about which she has not complained, appears fair, equitable and even generous to Mr. Carlton's side of the ledger.