Donna R. SAMPINOS, Plaintiff and Respondent,

v.

John S. SAMPINOS, Defendant and Appellant.

No. 860114–CA.

Court of Appeals of Utah.

Feb. 25, 1988.

Robert D. Maack (argued), Debra J. Moore, Watkiss & Campbell, Salt Lake City, for defendant and appellant.

Richard K. Crandall, Salt Lake City, for plaintiff and respondent.

Before BENCH, GARFF and GREENWOOD, JJ.

## OPINION

GARFF, Judge:

Defendant John Sampinos seeks reversal or modification of the parties' divorce decree which awarded plaintiff Donna Sampinos $800 per month alimony. We affirm the trial court's order.

The parties were married on September 1, 1972; defendant for the second time and plaintiff for the third time. No children were born during their eleven year marriage which ended in divorce on November 1, 1984. During the course of the marriage, the parties separated four times for a total period of more than four years.

At the time of the marriage, defendant owned a business, the Savoy Club, which he operated until 1977, an unimproved building lot in Price and a joint interest with a cousin in farm equipment used to operate his parents' farm. Plaintiff owned a house known as "Miller Creek," some furniture, and received Social Security benefits of $310 per month as a consequence of her former husband's death. These benefits terminated upon her marriage to defendant but would have otherwise terminated eleven months later upon her son's sixteenth birthday.

During most of the marriage, neither of the parties enjoyed any particular wealth. Defendant was continuously employed at the Savoy Club, on the family farm, or as a carpenter. Plaintiff worked from time to time during the first three years of the marriage. Her earnings ranged from $700 to $1,000 per month. Plaintiff did not work during the final eight years of the marriage and was unemployed at the time of trial.

In 1977, plaintiff received an inheritance consisting of money and mineral interests worth approximately $10,000. During one of the parties' separations, plaintiff was forced to sell the Miller Creek house because she was unable to maintain it. In 1979, after plaintiff sold her house, defendant stopped contributing to her support. Nevertheless, he returned periodically to her apartment to eat, to have his clothes laundered, and to enjoy the comforts plaintiff worked to create in her home. Plaintiff's only financial resources during this time were the proceeds from the Miller Creek sale and her inheritance.

In 1973, defendant and his four sisters inherited the Sampinos family farm. In 1980, coal deposits were discovered, markedly increasing the farm's value. In Octo-

ber 1980, defendant and his sisters sold the farm, subject to leaseback of grazing and farming rights, for $2,300,000. Defendant's share of the coal contract proceeds was $460,000 before taxes. He received $69,000 as a down payment in 1980, with the balance payable in thirty semi-annual installments of $25,000 apiece. The final payment will occur in July 1996, when defendant is sixty-eight years old.

After sale of the coal rights, the parties enjoyed a more lavish lifestyle until their separation in 1983. In July 1980, the parties reconciled for the last time and purchased a home known as "Crestview" solely from proceeds of the coal rights sale.

The divorce decree awarded the farm sale contract to defendant as his sole and separate property. It also awarded defendant his interest in the Savoy Club, the farm equipment, the unimproved lot, and the Crestview house. Plaintiff received a $25,000 property settlement to compensate for her share of the house, Savoy assets, and marital contributions. Although the court found both parties able to work, it awarded plaintiff $800 alimony per month "based on defendant's ability to pay and on plaintiff's needs and loss of Social Security benefits." At the time of trial, defendant was fifty-five years old and plaintiff was fifty-two years old.

Three issues are raised on appeal: (1) did the trial court award plaintiff alimony based solely on defendant's ability to pay rather than on the parties' needs and income earning abilities; (2) did the trial court abuse its discretion in awarding plaintiff $800 per month alimony based on the coal contract proceeds after the trial court had found them to be defendant's sole and separate property; and (3) is Utah Code Ann. § 30–3–5 (1984) unconstitutionally discriminatory as applied here, in that defendant is required to pay alimony to plaintiff regardless of her actual needs?

■ In an action for divorce, the trial court has considerable discretion to provide for spousal support. *Bushell v. Bushell*, 649 P.2d 85, 88 (Utah 1982). A trial court's award of such support in a divorce proceeding will not be set aside absent a showing of abuse of discretion. *Eames v. Eames*, 735 P.2d 395, 397 (Utah Ct.App.1987). However, the trial court must make findings on all material issues, and such findings must be sufficiently detailed and consist of enough subsidiary facts to reveal the steps the court took to reach its conclusion on each factual issue presented. Failure to substantiate such findings constitutes reversible error unless the facts in the record are "clear, uncontroverted, and capable of supporting only a finding in favor of the judgment." *Lee v. Lee*, 744 P.2d 1378, 1380 (Utah Ct.App.1987) (quoting *Acton v. J.B. Deliran*, 737 P.2d 996, 999 (Utah 1987)).

I

## ALIMONY

■ Defendant contends that the trial court abused its discretion in awarding plaintiff alimony based solely on his ability to pay rather than on the parties' needs and income-producing abilities. The Utah Supreme Court has enunciated that the purpose of spousal support is to "enable the receiving spouse to maintain as nearly as possible the standard of living enjoyed during the marriage and to prevent the spouse from becoming a public charge." *Paffel v. Paffel*, 732 P.2d 96, 100 (Utah 1986). Three factors must be considered in fixing alimony awards: (1) the financial condition and needs of the spouse claiming support; (2) the ability of the spouse to produce sufficient income for him- or herself; and (3) the ability of the responding spouse to provide the support. *Id.* at 101.

■ The first factor to be considered is plaintiff's financial condition and needs. The trial court awarded her $5,000 in cash, $20,000 secured by a mortgage on the Crestview home, payable in semi-annual installments, the household furnishings, an automobile, and any remainder of her inheritance. None of these assets is income-producing. Thus, even though she has some property, she has no external source of income.

The second factor is plaintiff's ability to produce sufficient income for herself. At

the time of trial, she was fifty-two years old with no professional training and few marketable skills. Her work experience, gained during the early years of marriage, was in relatively unskilled jobs. During most of the marriage, including separations, plaintiff devoted her time to household maintenance. Under similar facts, the Utah Supreme Court stated that it is unrealistic to assume that a woman in her mid-fifty's with no substantial work experience or training would be able to enter the job market and support herself in a style resembling that in which she had been living. *Jones v. Jones*, 700 P.2d 1072, 1075 (Utah 1985). Thus, the record substantiates the trial court's finding that, although plaintiff was healthy and able to work, she was still unable to produce an income sufficient to support herself.

The trial court also considered defendant's ability to provide support. Defendant has not disputed his ability to support plaintiff. Further, the record clearly demonstrates defendant's ability to pay plaintiff the support awarded. A review of the record indicates sufficient facts to support the trial court's findings regarding plaintiff's financial condition and needs, her inability to provide sufficient income to supply those needs, and defendant's ability to provide support. Thus, we find that the trial court appropriately considered the three factors enunciated in *Paffel*.

## II

## ALIMONY FROM DEFENDANT'S SOLE AND SEPARATE PROPERTY

Defendant also contends that the trial court abused its discretion in awarding plaintiff alimony, in that it based the award on defendant's receipt of proceeds from the sale of the Sampinos farm, which the trial court had determined to be defendant's sole and separate property.

At the time of the divorce, Utah Code Ann. § 30–3–5(1) (1984) provided that "[w]hen a decree of divorce is rendered, the court may include in it such orders in relation to the ... property and parties, ... as may be equitable." The Utah Supreme Court has consistently interpreted this statutory provision to confer broad discretion upon the trial courts in the division of property, regardless of its source or time of acquisition. *See Englert v. Englert*, 576 P.2d 1274, 1276 (Utah 1978); *Searle v. Searle*, 522 P.2d 697, 700 (Utah 1974). In exercising this discretion, the trial court's objective is to "allocate the property in a manner which best serves the needs of the parties and best permits them to pursue their separate lives." *Burke v. Burke*, 733 P.2d 133, 135 (Utah 1987) (footnote omitted). Furthermore, in fashioning an equitable property division, the trial court should consider the following principles of equity outlined in *Burke:*

> Premarital property, gifts, and inheritances may be viewed as separate property, and in appropriate circumstances, equity will require that each party retain the separate property brought to the marriage. However, the rule is not invariable. In fashioning an equitable property division, trial courts need consider all of the pertinent circumstances.

*Id.* (footnotes omitted).

In determining an equitable property division, the court may consider when property was acquired, the source of the property, the parties' standard of living, respective financial conditions, needs and earning capacity, the duration of the marriage, and the parties' ages at the times of marriage and divorce. *Id.* We have already addressed many of these considerations. Of particular concern, however, is what the parties gave up by the marriage. Defendant contends that plaintiff sold the Miller Creek home, netting over $47,000, and received an inheritance of over $10,000 from her father, all of which she had "dissipated for her sole benefit." However, we conclude from the record that plaintiff, while married to defendant, was forced to use her inheritance and proceeds from the sale of her home for support and maintenance, a portion of which was used for defendant's benefit. We, therefore, conclude that the trial court did not abuse its discretion in awarding plaintiff alimony from the coal contract proceeds even

though the trial court determined them to be defendant's sole and separate property. The trial court's allocation of alimony was an attempt to keep plaintiff from becoming a public charge and to realign the disparity between defendant's and plaintiff's standards of living. Thus, we find no abuse of discretion in the trial court's allocation of alimony from defendant's inheritance.

## III

### CONSTITUTIONALITY OF ALIMONY

Defendant does not challenge the facial validity of Utah Code Ann. § 30–3–5 (1984), but contends that it was unconstitutionally applied to him in that "the courts almost never award alimony to men and almost always award alimony to women regard-

less of actual need." Because we find that the trial court did, indeed, award plaintiff alimony on the basis of actual need, we find it unnecessary to address this and defendant's remaining issues on appeal.

Judgment affirmed. Costs to defendant.

BENCH and GREENWOOD, JJ., concur.