Janet R. COX (Rex), Plaintiff and Appellant,

v.

K. Norman COX, Defendant and Appellee.

No. 920818–CA.

Court of Appeals of Utah.

July 5, 1994.

Mary C. Corporon (argued), Corporon & Williams, P.C., Salt Lake City, for appellant.

M. Byron Fisher (argued), Fabian & Clendenin, Salt Lake City, Marilyn Moody Brown, Provo, for appellee.

Before DAVIS, GREENWOOD and JACKSON, JJ.

## OPINION

JAMES Z. DAVIS, Judge:

Appellant, Janet R. Cox (Wife), appeals from a decree of divorce from Appellee, K. Norman Cox (Husband). We affirm in part and reverse in part.

We draw the facts primarily from the trial court's findings of fact and from its memorandum decision. Where a party challenges a finding and adequately marshals the evidence, we draw the facts from the marshalled evidence and from the record.

The parties married July 1, 1988, separated December 1, 1990, and divorced August

30, 1992. During the twenty-nine months between their marriage and their final separation, they experienced a five-month trial separation. This was Wife's third marriage and Husband's second. At the time they married, she was forty-seven and he was fifty-six years old. No children were born into the marriage.

Prior to the marriage, Wife sold a house she owned and in which she had been living. She used $18,000 of the $21,000 sale proceeds to repay funds she had borrowed from her parents.

In 1966, Husband and his first wife built a house in Orem, Utah. Husband and his first wife paid off the mortgage and raised their nine children while living in the house. At the time of his second marriage, the house was unencumbered.

Shortly before and during this marriage, both parties expended funds to remodel the house so it could accommodate them and their respective children. The court adopted the parties' stipulation [1] that the value of the house at the time of the marriage and before remodeling was $77,000. The court determined that of the $29,993.65 spent toward remodeling, Wife contributed $12,562.65 [2] and Husband expended $11,931 plus $5,500 he repaid to Wife for her expenditures. The court determined that Husband had already reimbursed Wife $9,005.55. The court accepted the parties' stipulation that, at the time of the divorce, the value of the house was $105,000. The court determined that once the parties' expenditures were deducted from the value of the house, it had not materially appreciated.

Several days prior to the marriage, the parties executed an antenuptial agreement (the Agreement) and Husband executed a warranty deed purporting to convey an undivided one-half interest in the house to Wife. The timing of the signing and execution of these documents is as follows: Wife signed the Agreement on June 28, 1988, and Husband signed it June 30, 1988. The text of the Agreement states it was executed June 30, 1988. Husband executed the warranty deed on June 29, 1988. Husband and Wife married on July 1, 1988.

The warranty deed makes no mention of the Agreement, and the Agreement makes no mention of the warranty deed. Pertinent portions of the Agreement are as follows:

C. Each of the parties has made a full disclosure to the other party of all of his or her property and assets and of the value thereof, and this Agreement is entered into with a full knowledge on the part of each as to the extent and probable value of the estate of the other, and of all the rights conferred by law on each in the estate of the other by virtue of such proposed marriage.

. . . .

E. Each of the parties mutually desires to retain, manage or dispose separately by gift, will or otherwise all of his or her estate to the same extent as if each of such parties remained single.

. . . .

Article IX: Prospective husband represents that, on the date of this Agreement, the approximate value of his property and assets is THREE HUNDRED EIGHTY THOUSAND AND NO/100 DOLLARS ($380,000.00). Prospective wife represents that, on the date of this Agreement, the approximate value of her property and assets is SEVENTY THOUSAND AND NO/100 DOLLARS ($70,000.00).

The Agreement does not itemize the parties' separate property, nor does it mention whether it contemplates that Husband owns the entire fee of the house or whether Husband and Wife each own an undivided one-half interest. The Agreement states that each party agreed not to make any claim and to waive any right to "any and all rights by dower, homestead, surviving spouse award, inheritance, descent or any other marital right arising by virtue of statute or otherwise

---

1. While the stipulation itself is not part of the record, the court adopted portions of it in its findings of fact and in its memorandum decision regarding expenditures toward and values of the parties' property.

2. Wife had contributed a total of $18,062.65 toward the remodeling, but Husband reimbursed Wife $5,500, leaving a balance of $12,562.65.

in and to any parcel of the estate now owned and possessed by the other."

During the marriage, Husband earned his living working at his autobody business. While he was operating the business, he earned approximately $1,457 per month. During this time, Husband suffered from knee problems, which eventually rendered him unable to do autobody repair. At the time of the divorce, he was in need of a knee operation, which he could not afford.

After the parties separated, Husband sold his business. He received the proceeds in monthly installments of $500. He was employed briefly with Utah Valley Community College (UVCC), where he earned $17.65 per hour for approximately fifteen hours per week. However, his contract was not renewed. At the time of the divorce, he was receiving temporary unemployment compensation of $554 per month. Those unemployment benefits have since terminated, as have the monthly installments for the sale of the business. The court determined that Husband's expenses exceeded his income, requiring him to borrow from $450 to $600 per month from his children to meet his financial obligations.

During the marriage, Wife was employed as a secretary by Brigham Young University, earning $1,850 per month in gross income and $1,134 in net income. At the time of the divorce, Wife was enrolled in a Masters program in Public Administration at BYU. Her tuition was paid by her employer.

The court, in considering Wife's request for alimony, determined that

the present circumstances of the parties do not seem to compel an award of alimony to [Wife]. [Husband's] ability to pay alimony is clearly lacking at the present time. His historical earnings are not relevant because of his sale of his business and because his physical disability now precludes him from seeking jobs in his area of training; autobody repair.

It is clear from the evidence that neither party now is able to meet respective financial obligations. [Wife], since separation, has purchased a condominium and encumbered herself with a mortgage. [Husband] has sold off numerous personal items, a gun collection, snowmobiles, cars, etc. in attempting to finance the marriage. He also assumed new loans during the marriage. Most marketable personal items have been sold.

... it is clear that the financial condition and need of both parties are deplorable. [Wife] has enrolled in a tuition-paid graduate program with the hopes of bettering her financial position. [Husband] currently has no such opportunity. [Husband] has no current employment and because of physical disabilities, no reasonable foreseeable ability to obtain employment and to pay alimony. The marriage is of a very short duration and both parties suffered significant financial reversals during the marriage. Accordingly, no alimony award is merited.

Distribution of the house proved to be a major issue in the divorce. A related issue involved interpretation of the warranty deed and the Agreement. At trial, Wife testified that the $380,000 figure in the Agreement representing Husband's premarital property included the full value of the house.

Husband testified that his understanding of the warranty deed was that it "would protect the money that [Wife] had put into the remodeling of the house, and that my equity and the house would stay with me." The court agreed, finding that Wife "had knowledge of [Husband's] intent to protect his personal home." Wife's attorney, who prepared the warranty deed, testified that it was intended to protect Wife's remodeling expenditures.

The court, in construing both the warranty deed and the Agreement, determined that the warranty deed should be given effect only as security against Wife's expenditures for remodeling. Accordingly, the court awarded the house to Husband and ordered him to compensate Wife "for remodeling in the stipulated amount of $12,562.54."

In awarding the house to Husband, the trial court considered that it had been a relatively short marriage, that the parties were middle-aged at the time of marriage, and that no children had been born to them. Furthermore, Husband had paid off the

mortgage and had lived in the house for more than twenty years before he had married Wife. The court also contemplated the fact that both parties' financial situations had seriously deteriorated during the marriage, that Husband's career in autobody repair was virtually over due to his knee problems, while Wife's career appeared to be going forward in light of her steadily increasing income and her employer's sponsorship of her advanced degree program. The trial court considered that the house "has special meaning to [Husband] since he has raised all nine of his children in the home. If this court were to award [Wife] one-half the value of the home, [Husband] would be forced to sell the home to reimburse [Wife] since he is unemployed." The court also considered the fact that one-half the value of the house, or $52,500, was disproportionate to the $12,-562.65 expended by Wife toward its remodeling.

When Wife failed to accept Husband's offer of judgment, and when the court entered a judgment that was not more favorable than Husband's offer, the court ordered Wife to pay Husband's attorney fees of $4,649 based on the court's interpretation of Rule 68(b) of the Utah Rules of Civil Procedure.

Wife appeals claiming the court erred in failing to award her alimony, in failing to award her a one-half interest in the house, and in ordering her to pay attorney fees. Both parties seek attorney fees on appeal.

## ALIMONY

Wife claims the trial court erred in refusing to award her alimony. Specifically, she claims the court erred in assessing Husband's ability to provide support, in assessing Wife's circumstances, and in failing to consider Husband's historical income or to impute income.

■ The general purpose of alimony is to prevent the receiving spouse from becoming a public charge and to maintain to the extent possible the standard of living enjoyed during the marriage. *Howell v. Howell*, 806 P.2d 1209, 1212 (Utah App.) (citations and quotations omitted), *cert. denied*, 817 P.2d 327 (Utah 1991). In determining whether to award alimony and in setting the amount, the trial court must consider (1) the financial conditions and needs of the receiving spouse; (2) the ability of the receiving spouse to provide for him or herself; and (3) the ability of the payor spouse to provide support. *English v. English*, 565 P.2d 409, 411–12 (Utah 1977); *Chambers v. Chambers*, 840 P.2d 841, 843 (Utah App.1992). So long as the court considers these three criteria, it is not precluded from considering other pertinent factors, such as the length of the marriage, in awarding alimony. *Rappleye v. Rappleye*, 855 P.2d 260, 264 (Utah App.1993); *Boyle v. Boyle*, 735 P.2d 669, 671 (Utah App.1987).

■ Where a trial court has considered these three factors and has supported its rulings with adequate findings based on sufficient evidence, we will not disturb its determination unless it has clearly abused its discretion. *Willey v. Willey*, 866 P.2d 547, 550 (Utah App.1993); *Chambers*, 840 P.2d at 843. "Findings are adequate only if they are 'sufficiently detailed and include enough subsidiary facts to disclose the steps by which the ultimate conclusion on each factual issue was reached.'" *Hall v. Hall*, 858 P.2d 1018, 1021 (Utah App.1993) (quoting *Allred v. Allred*, 797 P.2d 1108, 1111 (Utah App.1990)).

### Imputing Income

■ "Imputing income to an unemployed or underemployed spouse when setting an alimony award is conceptually appropriate as part of the determination of that spouse's ability to produce a sufficient income." *Willey*, 866 P.2d at 554. However, a court should not impute income for child or spousal support until it first determines, "as ° a threshold matter, that income should be imputed because the [spouse] is *voluntarily* unemployed or underemployed." *Hall*, 858 P.2d at 1024.

### Historical Income

■ In assessing spousal support, trial courts have appropriately relied on historical income rather than income at the time of the divorce where a party "has experienced a temporary decrease in income." *Olson v. Olson*, 704 P.2d 564, 566 (Utah 1985); *accord Westenkow v. Westenkow*, 562 P.2d 1256,

1257 (Utah 1977). Trial courts have also appropriately relied on historical income where a spouse "experiences unusual prosperity during one year." *English*, 565 P.2d at 412. Where a party's income later proves to be "seriously and permanently diminished," that party may seek a modification. *Westenkow*, 562 P.2d at 1257.

### Findings

■ Here, the trial court made extensive findings both in its findings of fact and in its memorandum decision regarding Husband's ability to pay. These findings include: that Husband's disability rendered him incapable of working in his field of expertise, that he had sold his business, that his teaching contract with UVCC was not renewed, that his monthly unemployment compensation of $554 and his $500 monthly installments from the sale of his business would soon terminate, that his expenses exceeded his income, that he borrowed $450 to $600 per month from his children to meet his expenses, and that his financial condition would not likely improve considering his age, the sale of his business, his unemployment and his physical disability. These findings support the court's ultimate conclusion that Husband's ability to pay alimony was clearly lacking.

The trial court also made findings regarding Husband's historical earning ability in that it found his historical earnings were $1,457 per month, and that his earnings at UVCC were $17.65 per hour at fifteen hours per month. However, the court determined that Husband's historical income was not relevant because he had sold his business and because his physical disability prevented him from doing autobody work.

Regarding Wife's financial condition, needs, and her ability to support herself, the court found that she earned $1,850 gross income and received $1,134 net income after deductions for taxes and retirement, and that she was progressing toward a graduate degree and thus had "hopes of bettering her financial position," while Husband had "no such opportunity."

The court also noted that the marriage was a short one, that "both parties suffered significant financial reversals," and that "the financial condition and need of both parties are deplorable" such that "neither party now is able to meet respective financial obligations."

Given the court's detailed findings and analysis of the *English* factors, and given that these findings are supported by sufficient evidence, we affirm the trial court's decision not to award alimony.[3]

## DISTRIBUTION OF THE HOUSE

Wife claims the court erred in failing to award her a one-half interest in the house. We consider both legal and equitable principles relating to property distribution.

### Legal Principles

The legal bases underpinning distribution of the house arise from the construction of the warranty deed and the Agreement.

■ "Premarital agreements are construed in the same manner as other contracts." *Rudman v. Rudman*, 812 P.2d 73, 78 (Utah App.1991). Such agreements concerning the disposition of property owned by the parties at the time of their marriage "are enforceable as long as there is no fraud, coercion or material nondisclosure." *D'Aston v. D'Aston*, 808 P.2d 111, 112 (Utah App.1990); *accord Huck v. Huck*, 734 P.2d 417, 419 (Utah 1986).

■ When construing two documents concerning the same subject matter which "were executed 'substantially contemporane-

---

3. Wife argues that the trial court should have awarded her alimony payable from the equity in Husband's house, citing *Sampinos v. Sampinos*, 750 P.2d 615 (Utah App.1988). Her reliance is misplaced. The *Sampinos* court concluded that the trial court did not abuse its discretion in awarding the wife alimony from coal contract proceeds, which were deemed to be the husband's sole and separate property. The trial court justified its alimony award in part because it found that the wife, while married to the husband, was required to use her inheritance and proceeds from the sale of her home for support and maintenance and for the husband's benefit. *Id.* at 618. Also, the trial court had made findings on the three alimony factors, including a determination that the husband had the ability to pay alimony. *Id.* at 617–18.

ously' and are clearly interrelated, we must construe them as a whole and harmonize their meanings if possible." *Winegar v. Froerer Corp.*, 813 P.2d 104, 109 (Utah 1991) (quoting *Atlas Corp. v. Clovis Nat'l Bank*, 737 P.2d 225, 229 (Utah 1987)).

■■■ "A court may only consider extrinsic evidence if, after careful consideration, the contract language is ambiguous or uncertain.... A contract provision is ambiguous if it is capable of more than one reasonable interpretation because of 'uncertain meanings of terms, missing terms, or other facial deficiencies.'" *Id.* at 108 (Utah 1991) (quoting *Faulkner v. Farnsworth*, 665 P.2d 1292, 1293 (Utah 1983)). "Whether a contract is ambiguous is a question of law, which we review for correctness." *Sparrow v. Tayco Constr. Co.*, 846 P.2d 1323, 1327 (Utah App.) (citations omitted), *cert. denied*, 857 P.2d 948 (Utah 1993).

■■■ Because the Agreement and the warranty deed were executed nearly contemporaneously, we construe them as a whole. *See Winegar*, 813 P.2d at 109.

■■■ The Agreement sets a value of $380,000 for Husband's premarital property, but it does not itemize that property. The Agreement's failure to specifically state whether Husband's premarital property does or does not include the house is a missing term which renders it ambiguous. *See id.* at 108. Thus, the court properly considered parol evidence to supplement the document. The trial court considered Wife's testimony that the $380,000 figure included the entire value of the house. Thus, the Agreement, when construed in light of this evidence, assumes that Husband owns the entire fee to the house and did not convey a portion of his interest.

In harmonizing the Agreement with the warranty deed, the trial court properly considered parol evidence from Husband and from Wife's attorney that the warranty deed was intended to protect Wife's expenditures in remodeling the house. *See id.* at 110 (noting that debtor could transfer warranty deed for creditor to hold as security without actually conveying property).

In short, the trial court properly considered the two documents as a whole, and properly considered parol evidence where the documents were not specific as to Husband's premarital holdings. Moreover, the trial court did not err in construing the two documents such that the parties intended that the warranty deed would serve only as security for Wife's funds spent to remodel the house.

## Equitable Principles

We also consider the equitable bases for distributing the house.

■■■ Where the marriage is of short duration, where no children were born and where the couple was married later in life, a trial court may properly attempt to restore the parties to their premarital status. *See, e.g., Georgedes v. Georgedes*, 627 P.2d 44, 45 (Utah 1981) (trial court did not abuse discretion to put parties to short second marriage back into sole ownership of premarital properties); *Jesperson v. Jesperson*, 610 P.2d 326, 328 (Utah 1980) (where husband was 73 and wife was 68 at time of marriage, and where marriage was short, trial court did not abuse discretion in awarding premarital home to wife even though she deeded it in joint tenancy to husband).

■■■ In addition, a trial court may properly consider other factors relating to distribution of premarital property including

the amount and kind of property to be divided; whether the property was acquired before or during the marriage; the source of the property; the health of the parties; the parties' standard of living, respective financial conditions, needs, and earning capacity; the duration of the marriage; the children of the marriage, the parties' ages at time of the marriage and of divorce; [and] what the parties gave up by the marriage ...

*Hogue v. Hogue*, 831 P.2d 120, 122 (Utah App.1992) (quoting *Burke v. Burke*, 733 P.2d 133, 135 (Utah 1987)).

■■■ Here, the court considered that the parties married later in life, that this was not a first marriage for either party, that the Husband's health and employability were declining, and that the marriage was of short

duration. In addition, the trial court considered the fact that Husband had owned the house for many years before this marriage, that he had raised all nine of his children in the house, that a distribution to Wife of one-half its value would require him to sell the house, and that the $52,500 representing one-half of the house's value was disproportionate to the $12,562.65 spent by Wife toward its remodeling.

Because the trial court relied on sound legal and equitable bases, we find no abuse of discretion in its award of the house to Husband. We therefore affirm the court's decision to award the house to Husband.

### APPRECIATION

Wife claims the trial court erred in finding that appreciation on the house was not due to her remodeling efforts.

The trial court in its memorandum decision determined that once Husband's and Wife's expenditures were deducted from the $105,000 value of the house, it had not materially appreciated. Wife does not contest this assertion.

Here, the trial court derived its findings from the parties' stipulation. The court found that the parties stipulated that Wife contributed $12,562.65 toward the remodeling of the house, that Husband expended $11,931, and that he reimbursed Wife $5,500 for remodeling.

Because the court found that the parties so stipulated, because Wife does not marshal the evidence, and because she points to no evidence controverting these findings, we affirm the trial court's findings regarding expenditures, reimbursement, and appreciation.

### ATTORNEY FEES

 The court ordered Wife to pay a portion of Husband's attorney fees based upon her failure to accept his offer of judgment. The court relied solely on the provisions of Rule 68(b) of the Utah Rules of Civil Procedure in making this award.

Rule 68(b) provides that where a defending party serves an offer upon an adverse party who then refuses it, and where the judgment

"is not more favorable than the offer, the offeree must pay the costs incurred after the making of the offer." The Utah Supreme Court has construed this rule such that it applies "to taxable costs only. Attorney's fees are not taxable as costs, but may be awarded against an opposing party only if there is contractual or statutory liability therefor." *Nelson v. Newman*, 583 P.2d 601, 604 (Utah 1978).

Here, the court relied only on Rule 68, and not on any contractual or statutory provisions, when it awarded Husband a portion of his attorney fees. Moreover, the court determined that, aside from its Rule 68 award of attorney fees, "both [Wife] and [Husband] are in need of financial assistance and, thereby, [the court] orders that each pay respective attorney's fees."

In light of the language in *Nelson*, the trial court erred in awarding Husband a portion of his attorney fees. Because the trial court relied only on Rule 68(b) and because the court made a separate finding that both parties needed financial assistance and should each pay their respective attorney fees, we reverse the trial court's award of attorney fees and determine that each party pay their respective attorney fees.

Because the record is clear that both parties have limited financial means and neither party was properly awarded attorney fees at trial, we award no attorney fees on appeal.

### CONCLUSION

We affirm the trial court's (1) refusal to award alimony; (2) award of the house to Husband; and (3) findings regarding expenditures, reimbursement and appreciation. We reverse the trial court's award of attorney fees, determine that each party pay their respective attorney fees, and award no attorney fees on appeal.

GREENWOOD and JACKSON, JJ., concur.