**2025 UT App 200**

## THE UTAH COURT OF APPEALS

NATALIE BALL,
Appellee,
*v.*
TIMOTHY ALEXANDER BALL,
Appellant.

Opinion
No. 20240286-CA
Filed December 26, 2025

Fourth District Court, Provo Department
The Honorable Christine S. Johnson
No. 214400001

Trevor Casperson, Attorney for Appellant

Emily Adams and Mikayla Irvin,
Attorneys for Appellee

JUDGE MICHELE M. CHRISTIANSEN FORSTER authored this Opinion, in which JUDGES RYAN M. HARRIS and RYAN D. TENNEY concurred.

CHRISTIANSEN FORSTER, Judge:

¶1     Timothy Alexander Ball appeals the district court's award of certain marital property to Natalie Ball in the parties' divorce decree. He also contests the court's denial of his request for attorney fees pursuant to rule 68 of the Utah Rules of Civil Procedure. We agree that the court exceeded its discretion by miscalculating the appropriate amount of the offset it awarded to Natalie[1] for the marital funds dissipated by Timothy, and we therefore reverse and remand this case on that narrow issue. As

---

1. Because the parties share a surname, we refer to them by their given names, with no disrespect intended by the apparent informality.

to the request for attorney fees, however, the court did not exceed its discretion in denying Timothy's request for fees, and we therefore affirm this ruling.

BACKGROUND

¶2      Timothy and Natalie were married in February 1999. During their marriage, they had four children together. Also during their marriage, Timothy engaged in "admitted[ly] inappropriate relationships [with other women through] what he terms . . . 'pen pal' websites," spent "over $50,000 in marital funds" on these websites, and "actively concealed this activity from [Natalie] for at least three years." Eventually, one of these relationships was discovered and "serv[ed] as the catalyst for [Natalie] to file for divorce."

¶3      The parties separated in October 2020, and Natalie filed her petition for divorce in December 2020. In her petition, Natalie sought "sole legal and physical custody of the minor children," "$2,068 per month in child support," $2,000 per month in alimony "for a period of the length of the marriage," "possession of the marital home," and all the equity in the marital home.

¶4      Timothy eventually filed a settlement offer under rule 68 of the Utah Rules of Civil Procedure, offering Natalie joint legal and physical custody of the children, $674 per month in child support, $1,200 per month in alimony for ten years, and 10% of the equity in the marital home (Timothy asserted that the home was the property of his father and that the couple was "entitled to 20% of the total equity"). Natalie did not accept the settlement offer.

¶5      The case proceeded to trial, and the court thereafter entered written findings and conclusions and a divorce decree. In the divorce decree, Timothy was granted sole legal custody of the children as well as primary physical custody, while Natalie was awarded parent-time. Natalie was ordered to pay $512 per month in child support.

¶6      As to alimony, the district court found that Natalie had monthly expenses that exceeded her monthly income, leaving her with "an unmet need of $1,188.73 per month." The court then found that Timothy had monthly income that exceeded his monthly expenses by $418 per month. Based on those findings, the court awarded Natalie alimony of $400 per month.

¶7      Concerning the marital home, the court found that Timothy's father did not own the property as had been argued by Timothy. The court also found "unpersuasive" Timothy's assertion that his father was "meant to be repaid" funds given to the couple for the home. Thus, the court ordered that the home be sold and the equity in the home be split equally between Timothy and Natalie. However, the court made some "reallocation" of Timothy's portion of the equity to satisfy certain amounts that Natalie was awarded in the division of the parties' personal property and assets.

¶8      The largest of these offsets, by far, concerned the money Timothy had spent on dating websites while married to Natalie. The court found that Timothy "admitted to spending $54,003.42 in marital funds on Dating Sites" and "admitted to actively concealing these charges from [Natalie]." The court determined that this was "a dissipation of marital assets," that Natalie "should not have suffered the consequences" of these actions, and that, accordingly, Natalie "should be awarded $54,003.42 from [Timothy's share] of the equity in the home for his dissipation of the marital assets."

¶9      Timothy thereafter filed a motion pursuant to rule 59 of the Utah Rules of Civil Procedure requesting that the district court amend the divorce decree to, among other things, award Natalie an offset of only *half* of the $54,003.42 of dissipated funds. He argued that "pursuant to the presumption in divorce cases," Natalie would be entitled to only half of the total funds, reasoning that "if that money had been saved in an account instead, [Natalie] would have only be[en] entitled to 50% of it." He asserted that the court made no explanation as to "why this is an

exceptional circumstance" that would allow a departure from the general presumption that marital property be split equally, and he additionally argued that if the court intended to award Natalie the full percentage as "a punishment," "such a reasoning [was] not a valid basis to rebut the presumption of equal distribution."

¶10   The district court denied Timothy's motion to amend the divorce decree on this point, reasoning as follows:

> The Court had awarded one hundred percent of those funds to [Natalie] and this was based on the testimony of [Timothy] during trial indicating that he did not believe that [Natalie] should be responsible for those funds. That is what this ruling was in essence based on. This was not an intent to punish or take any punitive measures against [Timothy], rather this was based on what he represented.
>
> What has now been suggested by [Timothy] is that perhaps that's not what he meant, but that he meant for it to be divided in whole, the entire amount divided 50/50 between the two parties. So that he would be responsible for his part of the loss and [Natalie] would be responsible for the other half of the loss.
>
> The Court declines to do that for the reasons that were stated. [Timothy] indicated that he believed that it was proper that he did not intend for [Natalie] to be responsible for the money that he lost by his own failures. It was his acknowledgement that he had squandered that money.
>
> For that reason the Court had found that it was justified for [Timothy] to be responsible for the . . . funds that were taken out of the account for his

online dating relationships. That is still supported based on [Timothy's] own testimony.

¶11 Timothy also filed a motion requesting "that attorney fees be awarded on the basis that the Rule 68 [settlement] offer clearly represented a greater value than what was ordered in the Decree" to Natalie. The district court denied Timothy's motion. While the court stated that rule 68 "allows fees if permitted by law," the court also observed that "fees as permitted by law for establishing an order are limited" and are "based on need, ability to pay, and reasonableness." The court then reasoned that because Natalie had been "found to be financially in need" and did not "have the ability to pay the amount of fees that [Timothy was] asking for under Rule 68," an award of fees was not warranted under that rule.

¶12 Timothy thereafter timely appealed these determinations.

ISSUES AND STANDARDS OF REVIEW

¶13 Timothy argues that the district court erred by awarding Natalie an offset for the full amount of $54,003.42 of the dissipated funds. He argues that, instead, she should have been awarded an offset equal to only half of that amount. "In divorce actions, a district court is permitted considerable discretion in adjusting the financial and property interests of the parties, and its actions are entitled to a presumption of validity." *Gardner v. Gardner*, 2019 UT 61, ¶ 18, 452 P.3d 1134 (quotation simplified). "Accordingly, we will reverse only if (1) there was a misunderstanding or misapplication of the law resulting in substantial and prejudicial error; (2) the factual findings upon which the award was based are clearly erroneous; or (3) the party challenging the award shows that such a serious inequity has resulted as to manifest a clear abuse of discretion." *Id.* (quotation simplified).

¶14 Timothy also argues that the district court erred in denying his request for attorney fees under rule 68 of the Utah Rules of

Civil Procedure. "Trial courts have broad discretion in awarding attorney fees. Where the trial court may exercise broad discretion, we presume the correctness of the court's decision absent a clear abuse of discretion." *Mark v. Mark*, 2009 UT App 374, ¶ 7, 223 P.3d 476 (quotation simplified). Similarly, "[o]ur review of [factual] findings is highly deferential and we will reverse the district court only if its findings are clearly erroneous." *Dahl v. Dahl*, 2015 UT 79, ¶ 173, 459 P.3d 276.

ANALYSIS

I. The Dissipated Marital Funds

¶15 Timothy argues that the district court erred in awarding Natalie an offset equal to the total funds dissipated by him on dating websites. Timothy concedes "that it was his fault that the $54,003.42 was lost" and that "Natalie should not be responsible for its loss," but he argues that "[t]he court went too far" in awarding Natalie an offset equal to the full amount of those marital funds as opposed to an offset equal to half of that amount.[2] We agree.

---

2. Natalie argues that "Timothy has failed to provide a complete transcript of the parties' two-day divorce trial and has thus failed to provide an adequate record on appeal." She points to rule 11 of the Utah Rules of Appellate Procedure, which provides that "[i]f the appellant intends to argue on appeal that a finding or conclusion is unsupported by or is contrary to the evidence, the appellant must include in the record a transcript of all evidence relevant to such finding or conclusion." Utah R. App. P. 11(c)(2).

But Timothy *accepts* the district court's factual findings regarding the concessions he made at trial about Natalie not being responsible for the $54,003.42 loss, as well as the court's implicit finding that he agreed he should be 100% responsible for that loss. The real issue underlying Timothy's argument is what amount of

(continued…)

¶16 "In Utah, marital property is ordinarily divided equally between the divorcing spouses. After identifying property as marital, the court must consider whether there are exceptional circumstances that overcome the general presumption that marital property be divided equally." *Beverlin v. Beverlin*, 2025 UT App 72, ¶ 26, 572 P.3d 428 (quotation simplified). And "if such exceptional circumstances warrant an unequal division of the marital property, the district court must memorialize the exceptional circumstances in detailed findings." *Id.* (quotation simplified). Further, "when a court finds that a spouse has dissipated marital assets, the court should calculate the value of the marital property as though the assets remained. As a result, when the court conducts its equitable distribution of the marital property, the other spouse should receive a credit for his or her share of the assets that were dissipated." *Goggin v. Goggin*, 2013 UT 16, ¶ 49, 299 P.3d 1079 (footnote omitted). And the amount of that credit (or offset) should ordinarily be half of the dissipated marital funds, not the entire amount. *See id.* ¶ 46 (agreeing with the appellant's argument "that although he dissipated marital funds, half of those funds were his, and accordingly, he should only be accountable to [the respondent] for her share").

¶17 The district court determined that the $54,003.42 Timothy spent on dating websites was marital property. But the court awarded Natalie an offset of that full amount, reasoning that she "should not have suffered the consequences of [Timothy's] actions." Although the court also made reference to Timothy "actively concealing these charges from [Natalie]," the court later clarified in its decision on the rule 59 motion that the award of the full amount of the dissipated funds was not made with "an intent to punish or take any punitive measures against [Timothy]." Instead, the court repeatedly reiterated that the decision to award

---

an offset to the already-divided marital property is necessary to make him 100% responsible for that loss. We may review such an argument without reference to the entire trial transcript, and in this particular instance Timothy was not required to provide the whole trial transcript as part of the record on appeal.

an offset of the full amount "was based on the testimony of [Timothy] during trial indicating that he did not believe that [Natalie] should be responsible for those funds" that he lost. Thus, the court set forth findings clearly stating the reasoning behind Natalie's award—that Timothy had agreed Natalie should not be responsible for the $54,003.42 in lost marital funds.

¶18 But the problem here resides in the fact that the district court's ultimate award to Natalie of an offset of the full $54,003.42 goes beyond its stated intent of assuring that Natalie is not responsible for the loss of the marital funds. The court was simply incorrect that accepting Timothy's request to award an offset of half that amount would mean the loss would be "divided" and Timothy "would be responsible for his part of the loss and [Natalie] would be responsible for the other half of the loss." On the contrary, requiring that Timothy pay—from his portion of the equity in the marital home—half of the $54,003.42 to Natalie would make her whole, bringing her portion of the marital property equal to what it would have been if Timothy had never used the funds and the funds had instead remained in the couple's bank account to be split upon divorce. And requiring Timothy to pay half of the total amount to Natalie would increase Natalie's award of marital property by $27,001.71 and decrease Timothy's award by $27,001.71, resulting in Timothy receiving $54,003.42 less than Natalie and, thus, him bearing the entirety of the loss of the dissipated funds (and Natalie being reimbursed for the full amount of the loss).[3] The awarding of an offset equal to the full amount of funds, on the other hand, left Natalie with a larger award of marital property than she would have received had the funds never been dissipated in the first place, and we see nothing in the court's order indicating an intent to provide Natalie a windfall in this way. Thus, we determine that the court exceeded its discretion by miscalculating this award, and we therefore

---

3. Indeed, this result would be equivalent to awarding Natalie $54,003.02 of marital property off the top and then proceeding to equally divide the remining marital property between the parties.

reverse the award and remand the case so that the award may be accordingly adjusted.

## II. Attorney Fees

¶19 Timothy argues that the district court erred in refusing to award him his attorney fees. He argues that because he made a settlement offer under rule 68 of the Utah Rules of Civil Procedure and because, "on balance, the offer was more favorable than what Natalie received at trial," he should have been awarded attorney fees.[4]

¶20 Rule 68 provides, "If the adjusted award is not more favorable than the [settlement] offer, . . . the offeree shall pay the offeror's costs incurred after the offer." Utah R. Civ. P. 68(b). "The Utah Supreme Court has construed this rule such that it applies to taxable costs only. Attorney[] fees are not taxable as costs, but may be awarded against an opposing party only if there is contractual or statutory liability therefor." *Cox v. Cox*, 877 P.2d 1262, 1270 (Utah Ct. App. 1994) (quotation simplified); *accord Alpha Partners, Inc. v. Transamerica Inv. Mgmt., LLC*, 2006 UT App 331, ¶ 41, 153 P.3d 714.

¶21 Thus, when considering whether to award attorney fees, the district court here appropriately turned to the statutory provision addressing attorney fees in the divorce context, which provided that the court may order one party to pay the attorney fees of the other party "to enable the other party to prosecute or defend the action." Utah Code § 30-3-3(1) (2020) (current version at Utah Code § 81-1-203(1)(a)). An award of attorney fees under

---

4. Natalie argues that this issue was not preserved for appeal. But because this issue is easily resolved in her favor, we elect to address it without first engaging in a preservation analysis. *See State v. Kitches*, 2021 UT App 24, ¶ 28, 484 P.3d 415 ("[I]f the merits of a claim can easily be resolved in favor of the party asserting that the claim was not preserved, we readily may opt to do so without addressing preservation." (emphasis omitted)).

this section "must be based on evidence of the financial need of the receiving spouse, the ability of the other spouse to pay, and the reasonableness of the requested fees." *LeFevre v. Mackelprang*, 2019 UT App 42, ¶ 39, 440 P.3d 874 (quotation simplified). Here the district court denied Timothy an award of attorney fees because Natalie "was found to be financially in need" and did "not have the ability to pay," and Timothy specifically challenges this assessment on appeal.[5]

¶22 The district court's determination regarding Natalie's inability to pay was based on the findings in the divorce decree of her financial need. Those underlying findings establish that Natalie had monthly expenses that exceeded her monthly income, leaving her with "an unmet need of $1,188.73 per month." Although the court had awarded alimony of $400 per month (from Timothy's surplus), this still left Natalie with a monthly shortfall of $788.73.

¶23 Timothy does not directly attack these underlying findings but simply argues that "Natalie did in fact have sufficient resources" to pay his attorney fees, pointing to the fact that she was awarded half of the equity in the marital home, "over $61,000 in offsets," and half of the parties' bank account.[6] This argument is unavailing. Our caselaw does not "mandate[] that the court consider all the paying party's assets, such as home equity, as income" when addressing a party's ability to pay; "rather, the

_____

5. Although Timothy's opening brief additionally argues that "the attorney fee award under Rule 68 should not be subject to a needs based analysis," his reply brief clarifies that his appeal on the attorney fees issue "only challenges this finding" regarding Natalie's ability to pay. We limit our analysis accordingly.

6. By far the largest offset was the $54,003.42 awarded to Natalie for the dissipated funds discussed in Part I. And our resolution of that issue will result in this awarded offset being cut in half, which will significantly reduce the total amount of offsets awarded to Natalie in any event.

matter is left to the court's judgment." *Busche v. Busche*, 2012 UT App 16, ¶ 31, 272 P.3d 748. And in this case, considering the significant ongoing gap between Natalie's income and needs, we cannot say the court clearly erred in determining Natalie "to be financially in need" or that the court exceeded its considerable discretion in determining that an award of attorney fees was not warranted here.[7] We therefore affirm the district court's denial of Timothy's request for attorney fees.[8]

## CONCLUSION

¶24   The district court miscalculated the amount of the offset that would relieve Natalie from all responsibility for the dissipated marital funds, and we therefore reverse and remand this case for the district court to correct this award. But the court did not exceed its discretion in denying Timothy's request for attorney fees, and we therefore affirm that determination.

———————————

7. Furthermore, we note that Timothy was unlikely to have fared any better *had* the court taken these other awards into account. This is because the vast majority of these awards came from marital property that was split equally between the parties—the equity in the marital home and the funds in the parties' bank account. Thus, aside from the few offsets established by the court (which offsets will be substantially decreased as a result of this appeal), the consideration of these awards would have increased Timothy's ability to pay his own fees as much as they would have decreased Natalie's financial need.

8. Because of our resolution on this issue, we also necessarily deny Timothy's request for an additional award of attorney fees on appeal.